39679.   MEAD CORPORATION v. LIBERTY MUTUAL
INSURANCE COMPANY.

DECIDED DECEMBER 5, 1962—
REHEARING DENIED DECEMBER 18, 1962.

168

*Nall, Miller, Cadenhead & Dennis, A. Paul Cadenhead, Thomas A. Rice,* for plaintiff in error.

*Bryan, Carter, Ansley & Smith, W. Colquitt Carter,* contra.

RUSSELL, Judge. ■ This is a standard automobile liability policy containing the following provisions: "Coverage A. Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile. . . With respect to such insurance as is afforded by this policy, the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; . . . (b) (2) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon; . . . (b) (4) reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request; and the amounts so incurred, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy."

Eliminating as irrelevant to a decision here cases dealing with the question of whether the insurer's duty to defend includes a duty to appeal where there is a judgment against the insured

in excess of policy limits (in which connection see Indemnity Ins. Co. of N.A. v. Hawkeye-Security Ins. Co., 158 FSupp. 817 and Moore v. Columbia Cas. Co., 174 FSupp. 566), there is a conflict of authority as to whether the insurer's duty to defend in the trial court in the face of multiple claims continues after the limits of liability have been exhausted. New Hampshire has held on several occasions that it does not. See Lumbermen's Mutual Cas. Co. v. McCarthy, 90 N.H. 320 (8 A2d 750, 126 ALR 894), followed in Ocean &c. Corp. v. Peoples Wet Wash Laundry, 92 N.H. 260 (29 A2d 418), and Travelers Indemnity Co. v. New England Box Co., 102 N.H. 380 (157 A2d 765). The latter case, following McCarthy, went on to say: "By its policy the plaintiff agrees to defend any suit to recover damages because of injury to . . . property . . . but expressly stipulates that this right and duty is 'with respect to such insurance as is afforded by this policy,'" construing the words to mean that the duty exists only while "such insurance" is still afforded in the sense that it has not been paid out in satisfaction of a claim. A different interpretation was put on the words "such insurance as is afforded by this policy" in *Loftin v. U. S. Fire Ins. Co.*, 106 Ga. App. 287 (127 SE2d 53), where it was stated that the phrase means: " 'If this policy is issued for, or affords insurance for, bodily injury liability or property damage liability, the company shall defend any suit alleging such injury, etc.'" In other words, the duty to defend is determined by the type of coverage for which a premium is paid. It arises when a claim within the coverage afforded accrues. The further question remains as to whether, in the absence of any language in the policy to implement such a construction, it automatically ceases at the election of the insurance company to pay out its policy limits on another claim (with or without the consent of the insured) and leave the remaining actions dangling in thin air. The McCarthy case, supra, with one dissent, reached the conclusion that it did on the basis that the promise of the company to defend was "not as an undertaking for the benefit of the assured but as a stipulation for the benefit of the insurer." The fallacy of this conclusion was pointed out in American Cas. Co. of Reading, Pa.

*v.* Howard, 187 F2d 322, and American Employers Ins. Co. *v.* Goble Aircraft Specialties, Inc., 205 Misc. 1066 (131 NYS2d 393), where the courts adopted the dissenting view in the McCarthy case, *supra*, to the effect that the undertaking to defend is not only for the benefit of the insurer but for the insured as well. In a holding that the insurer was not relieved of its covenant to defend merely by paying out its limit of liability, the court in the Goble Aircraft case, *supra*, added (p. 400): "If plaintiff intended to reserve the right to withdraw counsel and cease to defend such actions as might be pending after payment of the total amount for which it indemnified, or to refuse to defend any new action commenced after such payments, it was under a duty to so state in the policy which it issued. The language required is such as would be clear and comprehensible to the average business man without legal assistance." The McCarthy case, *supra*, is also criticized, and Goble Aircraft, *supra*, approved in Appleman, Insurance Law and Practice, Vol 7A, § 4685 at page 470, where the author says of McCarthy: "This result is subject to censure, however, when we consider that the insurer's duty is both to defend actions *and* to pay judgments obtained against the insured. Otherwise, where the damages exceed the policy coverage, the insurer could walk into court, toss the amount of the policy on the table, and blithely inform the insured that the rest was up to him. This would obviously constitute a breach of the insurer's contract to defend actions against the insured, for which premiums had been paid, and should not be tolerated by the courts."

" 'The principle that the "duty to defend is broader than the duty to pay" is now beyond cavil.' The agreement to defend is not a covenant subordinate to or dependent on the agreement to indemnify; it is distinct from, different from, independent of, and broader than the insurer's promise to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed on him by law because of bodily injury. There is no language in the policy making the defense covenant dependent on the amount of liability for bodily injury. The defense covenant is clear, positive, and unambiguous, and should be accorded its plain and ordinary mean-

ing." Comunale v. Traders & Gen. Ins. Co., (Cal. App.) 321 P2d 768, 773. See also to the same effect Anchor Cas. Co. v. McCaleb, 178 F2d 322.

This obligation to defend arises when the cause or causes of action accrue against the insured. Once this obligation arises it continues as an obligation until the matter is terminated by performance or by contract.

That the agreement to defend is a covenant separate and distinct from the agreement to indemnify is explicit in our decisions in *Loftin v. U. S. Fire Ins. Co.,* 106 Ga. App. 287, supra, and *National Surety Corp. v. Dunaway,* 100 Ga. App. 842 (112 SE2d 331). By payment of his premium the insured not only purchases protection up to the policy limits, but he also pays for and secures protection from the expenses of defense. He likewise purchases the right to the assumed skill, experience and services of the insurance company personnel, these not being ordinarily available to the average policy holder. The argument that the insurance company has no further pecuniary interest in the outcome of the litigation because it has paid out the policy limits is erroneous, because it is also obligated to fulfill its other obligations for which it received a premium payment. Since the obligation to defend is in addition to the obligation to pay damages, the two are necessarily coupled together. To contend that it would not be to the best interests of the insured to leave his defense to the insurance company and counsel chosen by it after the company had ceased to have a pecuniary interest in the indemnity aspects of the case, and that such a defense might in that event be carelessly or frivolously handled, would be a reflection on the insurance industry and the counsel who represent them. Attorneys, whether or not paid by insurance companies, owe their primary obligation to the insured they are employed to defend, and the insurance company likewise owes to its insured the duty to provide competent investigative and legal representation. In furnishing this the insurance company is not itself "practicing law," and the argument that a continuance of the agreement to defend after the company's pecuniary liability for damages is exhausted would be contrary to public policy must be rejected.

The petition set out a cause of action for the recovery of attorney fees and costs necessary to the defense of the remaining claims after the defendant breached its contract by refusing longer to provide the insured with representation.

■ In such an action the insurance company is liable for attorney fees and penalty only where the refusal to pay was in bad faith, frivolous, and unfounded. *Code Ann.* § 56-1206; *Equitable Life Assur. Society v. Gillam,* 195 Ga. 797 (25 SE2d 686) ; *Security Ins. Co. v. Hudgins,* 87 Ga. App. 711 (75 SE2d 267). As the question here presented is an issue of law apparently not heretofore decided by our courts, and which has been the subject of conflicting judgments in other jurisdictions, the defendant had a right to have the issue decided by the courts as to whether or not it had breached its contract by refusing to defend. It was not error to sustain that part of the demurrer to Paragraph 14 of the petition which contended that the petition failed to show the defendant had acted in bad faith.

The trial court erred in sustaining the general demurrers and dismissing the petition.

*Judgment reversed in part; affirmed in part. Carlisle, P. J., and Eberhardt, J., concur.*