**James URSPRUNG, Assignee of Sherry Ann Clark, Appellant,**

v.

**SAFECO INSURANCE COMPANY OF AMERICA, Appellee.**

Court of Appeals of Kentucky.

June 29, 1973.

James F. Clay, Sr., Clay & Clay, Danville, for appellant.

Pierce Lively, Lively & Rodes, Danville, for appellee.

CATINNA, Commissioner.

This is an appeal from a summary judgment of the Boyle Circuit Court dismissing with prejudice the claim of James Ursprung, as assignee of Sherry Ann Clark (now Lynch).

On June 6, 1968, at about 9:45 p. m., an automobile being operated by Sherry Ann collided with a motorcycle being operated by Ursprung. The accident occurred about four miles east of Danville in Boyle County. Ursprung was injured.

Sherry Ann had a liability insurance policy with Safeco Insurance Company of America. Investigation of the facts surrounding the accident indicated that Ursprung was at the time operating his motorcycle without lights. The driver of an automobile immediately behind Sherry Ann gave a statement to the effect that she did not see the driver of the motorcycle prior to the accident, while the operator of a service station in the vicinity stated that the motorcycle was not even equipped with lights and he had cautioned Ursprung not to operate it on the road.

Sherry Ann testified she did not see Ursprung prior to the accident because he did not have lights on his motorcycle.

No demand for damages was made by Ursprung other than that contained in an action he filed against Sherry Ann seeking recovery of $182,500. Safeco Insurance Company, whose coverage was limited to $10,000, employed the firm of Lively and Rodes as counsel for Sherry Ann and so informed her by letter. There was also forwarded the usual excess-liability letter suggesting that as the amount sued for exceeded the coverage of the company she should feel free to employ additional counsel to represent her. Upon advice of an attorney, Cecil C. Sanders, Sherry Ann decided not to employ other counsel.

Between the time of the filing of the action and the date of the trial, a number of depositions were taken. Counsel for plaintiff and defendant were together upon these occasions, but at no time was there ever any discussion concerning a settlement of the claim. Neither Ursprung nor his attorneys ever offered to settle the claim for a sum within the limits of the policy or for any sum less than the amount claimed. Conversely, the attorneys for Sherry Ann made no effort to negotiate a settlement and did not at any time prior to the trial offer to settle the claim of Ursprung for a sum within the limits of the policy coverage.

The action was tried on October 7, 1969, and a jury, after deliberating some four hours, returned a nine-man verdict awarding Ursprung $22,969.30. Counsel for Sherry Ann filed motion for judgment notwithstanding the verdict and for a new trial. A ruling on these motions was delayed until January 15, 1970, at which time they were overruled.

On January 30, 1970, Nelson D. Rodes, Jr., forwarded a letter to Cecil Sanders with copies to Sherry Ann and her father, J. B. Clark, informing them the Boyle Circuit Court had overruled the motions on January 15, 1970, and the Safeco Insurance Company had decided to pay the limits of the policy, $10,000, rather than appeal. The letter also set out an offer by Ur-

sprung's counsel to settle the judgment for $15,000. The concluding sentence of the letter reads as follows:

"Your client is further advised that an appeal must be taken within thirty days from the entry of the order, overruling the motion for judgment notwithstanding the verdict which was entered on January 15, 1970."

Rodes again wrote Sanders on February 5, 1970, that Safeco did not plan to appeal the judgment and would pay its policy limits of $10,000 into court in partial settlement of the judgment. The concluding sentence in this letter reads as follows:

"I hope the defendant will appeal the judgment in this case, as I have strongly felt that the court should have directed a verdict for the defendant on the grounds that the plaintiff was contributorily negligent as a matter of law."

There were also several telephone conversations between Rodes and Sanders. In one of these conversations, Sanders informed Rodes there would be no appeal as they had made other arrangements that would protect Sherry Ann. At no time subsequent to the entry of the judgment did Sherry Ann or Sanders demand that Safeco appeal.

On March 5, 1970, Sherry Ann, in consideration of the agreement of James Ursprung to forego the issuance of an execution against her on the unpaid balance of the judgment rendered in the Boyle Circuit Court on October 7, assigned, transferred, and set over unto Ursprung any and all claims, demands, causes of action or rights which she had or might acquire against Safeco arising out of or in any manner existing by reason of its handling of her defense in the Boyle Circuit Court, including the failure to make a settlement before judgment and failure to provide a proper defense and appeal from the judgment. On May 11, 1970, Ursprung, as assignee of Sherry Ann, filed this action against Safeco seeking the recovery of $12,969.30 with

interest, being the excess of the amount paid by Safeco on his judgment against Sherry Ann in the Boyle Circuit Court.

The complaint alleged "bad faith" on the part of Safeco in its failure to seek a settlement of the claim within policy limits and a breach of the contract "to defend" in that it failed to appeal from the judgment of the Boyle Circuit Court. Interrogatories were served and answered by all of the parties. Depositions of the attorneys involved in the action of Ursprung against Sherry Ann Clark, together with those of other witnesses, were taken and the proceeding was then submitted upon a motion for summary judgment.

The court, in directing that the action be dismissed with prejudice, set out the following conclusions of law which are now the issues before this court:

"1. There is no genuine issue of material fact on the question of bad faith. Even if supported by evidence, which is totally lacking, the allegation of negligent failure to settle the claim within the policy limits does not state a claim upon which relief may be granted.

"2. When the policy limits had been exhausted by paying such limits plus interest and Court costs the Defendant had no duty to appeal or to take any further steps with respect to the policy."

We will discuss each of these questions in the order above set out.

There is absolutely no evidence of any bad faith on the part of Safeco insofar as a settlement of the Ursprung claim is concerned. In support of this finding, see State Farm Mutual Automobile Insurance Company v. Marcum, Ky., 420 S.W.2d 113 (1967); Harvin v. United States Fidelity and Guaranty Company, Ky., 428 S.W.2d 213 (1968).

The lower court found:

"4. Neither J. B. Clark nor Sherry Ann Clark ever requested Safeco Insurance Company of America or the attorneys defending the action to seek a settlement within the policy limits. Neither James Ursprung nor anyone representing him ever made a demand for settlement either from Safeco Insurance Company of America or its attorneys other than the prayer of the Complaint which was for One Hundred Eighty Seven Thousand Dollars ($187,000.00) (sic)."

Ursprung claims that the failure of Safeco to appeal was a breach of its contract of insurance. Throughout the cases we have read, some of which are cited, we find that a "bad faith" failure to appeal on the part of the insurance carrier is considered a breach of the duty to defend the same as a refusal to settle within the policy limits. The obligation to appeal, if any, is considered to be an integral part of the carrier's contractual obligation "to defend."

This court has not been called upon to decide this particular question. However, other jurisdictions have considered the problem. Safeco's duty to appeal under the insurance contract, if it had such duty, flows from that portion of the contract which reads as follows:

"And Safeco shall defend any suit alleging such damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent * * *."

The rule as generally stated is that the contract "to defend" does not necessarily raise an obligation to prosecute an appeal. In 44 Am.Jur.2d, Insurance, Section 1537, page 416, it is said:

"A liability insurer, in determining whether to take an appeal from an adverse judgment against the insured, must take into consideration not only its own rights but the rights of others for which it is responsible; the insurer becomes liable to such parties for refusal to take an appeal only if it acts fraudulently or in bad faith."

Cf. Hawkeye-Security Insurance Company v. Indemnity Insurance Company of North

America, 10th Cir., 260 F.2d 361, 69 A.L. R.2d 684 (1958).

However, some courts permit the insurer to pay the limits of its liability into court and thereafter abstain from further proceedings in the action. The Boyle Circuit Court in this case adopted the view that where the insurance carrier has exhausted its coverage it is under no further obligation to the insured and, consequently, not obligated in any way to prosecute an appeal from the judgment. This view is supported by a number of decisions of other jurisdictions. The question of whether the rule is followed is dependent upon the construction of the clause "such insurance as is afforded by this policy." We believe the clause in the Safeco policy "and Safeco shall defend any suit alleging such damages which are payable under the terms of this policy" lends itself to the same construction as the first clause quoted.

In General Casualty Company of Wisconsin v. Whipple, 7th Cir., 328 F.2d 353 (1954), the clause read "as respects insurance afforded by this policy." The court, in holding that if the limits of the policy had been paid into court the insurer had no duty to defend the insured further and no duty to appeal from the judgment, quoted from Denham v. La Salle-Madison Hotel Co., 7th Cir., 168 F.2d 576 (1948), cert. denied, 335 U.S. 871, 69 S.Ct. 167, 93 L.Ed. 415, the following:

"* * * Upon plaintiff's tender of $10,000, its liability for the payment of losses was extinguished. It was only obligated to defendant 'as respects insurance afforded by this policy,' and there being no further insurance afforded, we are of the view that its obligation to defend was likewise terminated."

This construction of the clause treats as indivisible the contract "to defend" and the obligation to pay, with payment of the limits under the policy constituting a complete satisfaction of the entire contract of insurance and discharging the insurer from all further liability. This is an extremely harsh construction and in many instances will, in the course of litigation, leave the insured without adequate or any protection.

We do not agree with the construction that the clause "insurance as is afforded" is tied directly to the extent of liability of the insurer but believe rather it is descriptive of the type coverage afforded by the policy. Thus, we say the policy was issued for or affords coverage for such things as bodily injury, public liability, or property damage, etc., in which case the duty to defend would be determined by the type coverage for which a premium is paid, and this duty would arise when a claim within the coverage afforded accrues.

In Mead Corporation v. Liberty Mutual Insurance Company, 107 Ga.App. 167, 129 S.E.2d 162 (1962), the court, in holding that as the agreement "to defend" was separate from the agreement to indemnify insurer was not relieved of this obligation even after payment of the policy limits, stated:

"'The principle that "the duty to defend is broader than the duty to pay" is now beyond cavil.' The agreement to defend is not a covenant subordinate to or dependent on the agreement to indemnify; it is distinct from, different from, independent of, and broader than the insurer's promise to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury. There is no language in the policy making the defense covenant dependent on the amount of liability for bodily injury. The defense covenant is clear, positive, and unambiguous, and should be accorded its plain and ordinary meaning. Communale v. Traders & Gen. Ins. Co., 321 P.2d 768, 773 (Cal.App.). See also to the same effect Anchor Cas. Co. v. McCaleb, 5 Cir., 178 F.2d 322."

\* \* \* \* \* \*

"That the agreement to defend is a covenant separate and distinct from the

agreement to indemnify is explicit in our decisions in Loftin v. U. S. Fire Ins. Co., supra, 106 Ga.App. 287, 127 S.E.2d 53, and National Surety Corp. v. Dunnaway, 100 Ga.App. 842, 112 S.E.2d 331. By payment of his premium the insured not only purchases protection up to the policy limits, but he also pays for and secures protection from the expenses of defense. He likewise purchases the right to the assumed skill, experience and services of the insurance company personnel, these not being ordinarily available to the average policy holder. The argument that the insurance company has no further pecuniary interest in the outcome of the litigation because it has paid out the policy limits is erroneous, because it is also obligated to fulfill its other obligations for which it received a premium payment. Since the obligation to defend is in addition to the obligation to pay damages, the two are necessarily coupled together. * * *."

In Travelers Indemnity Company v. East, Miss., 240 So.2d 277 (1970), the clause was "with respect to such insurance as is afforded by this policy." Travelers refused to defend an appeal claiming that it had paid the full amount due under the contract and that it had no obligation to defend after the face limit on the coverage of the policy had been exhausted. The court held that Travelers was required to defend under the terms of its policy although it had paid the full amount of its money coverage. In so holding the court said:

"There are two lines of authority on the issue here presented. The theory favorable to the appellant is that the primary obligation imposed upon the insurer is to pay the insured's legal liability for damages on account of the contingencies specified in the policy and the provision to defend the litigation is designed to implement that primary obligation to the end that, when the full amount named in the policy has been exhausted, the insurer has no further responsibility to defend. (Citations omitted.)

"On the other hand, there is a well defined theory shown by the following authorities to the effect that the obligation to defend set out in the insurance policy is an obligation to defend the insured and is separate and distinct from the duty to coverage and to pay. The defense clause in the policy is considered to be a contractual right of the insured for which he paid a premium, irrespective of other insurance and irrespective of primary or excess coverage." (Citations omitted.)

In Kaste v. Hartford Accident & Indemnity Company, 5 A.D.2d 203, 170 N.Y.S.2d 614 (1958), the court held that the covenant to defend embraces the duty to prosecute an appeal from a judgment against an insured where there are reasonable grounds for appeal. A concurring opinion further extends this duty by the following: "It has frequently been stated that the duty to defend is broader than the duty to pay * * *. Moreover, the duty to defend is indivisible and it requires the carrier to conduct the whole defense and, if necessary to vindicate the rights of the insured, to prosecute an appeal * * *." Cf. Fidelity General Insurance Company v. Aetna Insurance Company, 27 A.D.2d 932, 278 N.Y.S.2d 787 (1967). The reasoning in this line of cases is indicative of a rule by which the covenant to defend embraces an obligation to appeal.

The fact that the prosecution of an appeal would place an additional cost burden upon the insurer has no bearing on the obligation to appeal, as this duty is one which flows from the responsibility to represent the assured in good faith. Home Insurance Company v. Royal Ind. Company, 68 Misc.2d 737, 327 N.Y.S.2d 745 (1972).

■ After reviewing the rules of other jurisdictions, we have concluded that the contractual obligation to defend carries with it an obligation to prosecute an appeal

from a judgment against an insured where there are reasonable grounds for appeal.

The insured has a duty to act reasonably under the circumstances.

In the case at bar the insured was represented by counsel who advised the insurer that appeal was not necessary and that the insured's interests were otherwise protected. Therefore, the insurer cannot be said to have unreasonably failed to take an appeal.

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD, and STEPHENSON, JJ., sitting.

All concur.