Carroll,
No. 4750.

TRAVELERS INDEMNITY COMPANY

*v.*

NEW ENGLAND BOX COMPANY & a.

Argued December 1, 1959.

Decided January 27, 1960.

*Burns, Bryant & Hinchey* and *Lawrence E. Spellman* (*Mr. Spellman* orally), for the plaintiff.

*Cooper, Hall & Cooper* (*Mr. Richard Cooper* orally), for the defendant New England Box Company.

*Louis C. Wyman*, Attorney General and *John J. Zimmerman, Jr.*, Assistant Attorney General, for the State; *Burnham B. Davis* for the towns of Freedom and Madison; *Sheehan, Phinney, Bass, Green & Bergevin* for Carroll County Y. M. C. A., William B. and Helen Clark, and George A. and Beverly M. Hewitt; and *Errol S. Hall* for Charles DiPrizio; furnished no briefs.

DUNCAN, J. The policy of insurance issued by the plaintiff to New England Box Company under date of November 11, 1956 insures the company with respect to "Coverage A" for "bodily injury liability" within limits described in the declarations as $100,000 for "each person," $300,000 for "each accident" and $300,000 for "aggregate products"; and with respect to "Coverage B" for "property damage liability" within limits of $25,000 for "each accident" and $50,000 for each of "aggregate operations," "aggregate protective," "aggregate products," and "aggregate contractual."

The declarations further specify the "advance premiums" payable for each of coverage A and B, with respect to a hazard designated "Premises-Operations," as applied to specified locations including "Madison, Carroll Co., N. H."

By "Coverage B" of the policy, the insurer undertakes "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." This undertaking is qualified by certain "Exclusions," none of which is claimed to be applicable here. Under the head of "Conditions" appear certain definitions, including a definition of the term "products hazard," which is not material to the coverage applicable to the pending action.

Under the head of "Limits of Liability, Coverage B" appears the following: "The limit of property damage liability stated in the declarations as applicable to 'each accident' is the total limit of the company's liability for all damages arising out of injury to or destruction of all property of one or more persons or organizations, including the loss of use thereof, as the result of any one accident.

"Subject to the limit of liability with respect to 'each accident' the limit of property damage liability stated in the declarations as 'aggregate operations' is the total limit of the company's liability for all damages arising out of injury to or destruction of property,

including the loss of use thereof, caused by the ownership, maintenance or use of premises or [by?] operations rated on a remuneration premium basis or by contractor's equipment rated on a receipts premium basis . . . .

"The limits of property damage liability stated in the declarations as 'aggregate operations, aggregate protective' and 'aggregate contractual' apply separately to each project with respect to operations being performed away from the premises owned by or rented to the named insured."

The plaintiff claims that the limit of its liability under the policy for all property damage occasioned by the fire or fires of April 21, 1957 is the limit of "$25,000 each accident" specified in the declarations. The defendants on the other hand contend that the damage suffered by each of them was a separate "accident," and that the applicable limit is "$50,000 aggregate operations" as specified by the declarations.

The issue presented is not readily determinable from an examination of the policy, which must be considered as a whole. The limits of liability for bodily injury in part follow a familiar form of "$100,000 each person" and "$300,000 each accident." See 8 Appleman, Insurance Law and Practice 296. These limits are followed by a third less familiar limit of "$300,000 aggregate products." See Products Liability Insurance, 1957 Wis. L. Rev. 429. By endorsement, relating solely to coverage A against bodily injury liability, the term "accident" was amended to "occurrence," and the latter word defined therein to include either "accident" or "continuous or repeated exposure to conditions which result in bodily injury." The endorsement further provides that "all damages arising out of such exposure to substantially the same general conditions existing at or emanating from each premises location shall be considered as arising out of one occurrence." Further provisions of the policy itself, under the heading of "Conditions," which bear upon the limit of "$300,000 aggregate products" are as follows: "Subject to the limit of liability with respect to each accident, the limits of bodily injury liability and property damage liability stated in the declarations . . . are respectively the total limits of the company's liability for all damages arising out of the products hazard. All such damages arising out of one lot of goods or products prepared or acquired by the named insured or by another trading under his name shall be considered as arising out of one accident."

Thus it seems apparent that in case of accidental bodily injury to several persons, suffered as a result of operations conducted or products prepared by the insured, the applicable limits of coverage under the policy would be $100,000 as to any one person or claimant, and $300,000 as to any one accident, or occurrence if more than one person should be injured thereby. And in the event of injury as the result of products obtained from the insured, liability for bodily injury suffered by several persons on account of "one lot of goods" would be limited to "$300,000 each accident" because under the provision last quoted all damages are to "be considered as arising out of one accident."

It is also apparent that in a case where the insurer paid a total of $300,000 in settlement of such claims for bodily injury the limit of liability for "aggregate products" would also be reached, since it was the same as the limit for "each accident." By the same token under the "Condition" last quoted, the plaintiff's liability for property damage arising out of one lot of products would be "considered as arising out of one accident" and hence governed by the "$25,000 each accident" limit under coverage B, rather than the "$50,000 aggregate products" limit thereunder.

Interpretation of the policy limits applicable to coverage B arising out of the "premises-operations" hazard appears to be somewhat less plain. See 5 Couch, Cyc. of Insurance Law, Supp. s. 1189-1. It seems significant however that as to coverage B, while no separate limit of liability as to "each person" is stated comparable to such a limit imposed as to coverage A, as to each type of coverage there is a limit for "each accident." Since in the case of bodily injury liability, the limit applicable to "each accident" was evidently intended to apply to liability arising out of the claims of several persons injured in a single accident, it is reasonable to assume that the same construction was intended to apply to the liability limit for property damage arising out of "each accident," unless some other provision of the policy indicates differently.

We find no provision which indicates that a different construction was intended. On the contrary, the principle controlling liability for bodily injury appears to be expressly extended to property damage by the "Condition" headed "Limits of Liability, Coverage B," previously quoted: "The limit of property damage liability stated in the declarations as applicable to 'each accident' is the total limit . . . for all damages arising out of injury to or

destruction of all property of *one or more persons . . . as the result of any one accident.*" (Emphasis supplied).

Thus if the damages suffered by these defendants may properly be said to have been "the result of any one accident," the limit of plaintiff's liability is $25,000 as it contends, rather than "$50,000 aggregate operations" as the defendants assert.

Upon the question of what constitutes a single accident in a case such as this, the authorities are in disagreement. Anno. 55 A. L. R. (2d) 1300, 1303. The defendants rely upon *Anchor Casualty Co.* v. *McCaleb*, 178 F. 2d 322 (5th Cir. 1949) involving a policy the terms of which do not appear in detail in the opinion. Damage was occasioned to several property owners by the intermittent eruption of an oil well over a period of two days, and the damage to each individual was held to be a separate accident. Hence the "aggregate" limit was held applicable as "a total limit of damage to property of different persons from a closely related series of events, such as were evident in this case." *Id.*, 325. *Cf.* also, *Johnson Corp.* v. *Indemnity Ins. Co.*, 6 N. Y. App. Div. (2d) 97.

A later decision by the Court of Appeals for the Fifth Circuit, respecting coverage for damage to the property of fourteen different owners caused by collision of a truck with a freight train which also damaged sixteen freight cars, held that under a policy partially resembling the one issued by this plaintiff a $5,000 limit applicable to "each accident" was controlling as to all claims presented, because according to the ordinary meaning of the word, a single accident was involved, and because no intention was shown to consider liability for property damage in terms of the individual claims of "each person" damaged. *St. Paul-Mercury Indemnity Co.* v. *Rutland*, 225 F. 2d 689 (5th Cir. 1955). See 8 Appleman, Insurance Law, *s.* 4891, supp. *p.* 86. This decision has since been followed in other jurisdictions, in cases presenting similar problems (*Truck Ins. Exchange* v. *Rohde*, 49 Wash. 2d 465), including the question of liability for damage by fire. *Tri-State Roofing Co.* v. *New Amsterdam Casualty Co.*, 139 F. Supp. 193 (W. D. Pa. 1955); *Barrett* v. *Iowa Nat'l Mut. Ins. Co.*, 264 F. 2d 224 (9th Cir. 1959).

We conclude that the principles applied in the *Rutland* case should be controlling here. As pointed out by a recent commentator, "in the *Rutland* case . . . under the plaintiff's reasoning, the insured would have possessed only $5000 worth of protection . . . if the railroad owned all of the property damaged [but if] sixty persons happened to own portions of the property . . . this elastic

policy would have expanded to provide $300,000 in protection." 10 Syracuse L. Rev. 69, 77.

We are particularly satisfied that this was not the intention of the parties to this contract, in view of the express if somewhat tautological provision that the limit "$25,000 each accident" should be the "total limit" for all damages for injury of "all property of one or more persons . . . as the result of any one accident." See 10 Syracuse L. Rev. *supra,* 69, 70, 73 note 24. This is an indication that in interpreting the limit of property damage liability for "each accident," as in the case of the bodily injury limit for "each accident," the word "accident" was intended to be construed from the standpoint of cause rather than effect. Since a single cause produced the damage for which recovery for property damage is sought by these defendants, the limit of "$25,000 each accident" should apply. "Every consideration would indicate that the parties to a standard policy make a normal, common sense contract under which the insured decides to purchase and pay for a definite amount of protection with respect to what reasonable persons would regard as one accident, no matter how many persons should become involved." 10 Syracuse L. Rev., *supra,* 77.

A further question is presented as to whether the plaintiff is obligated to defend the pending or future actions once the policy limit of $25,000 has been exhausted by the payment or settlement of claims or judgments. Under our decided cases, and subject to qualifications there stated, it is plain that it is not. *Lumbermen's Mut. Ins. Co.* v. *McCarthy,* 90 N. H. 320; *Ocean Accident Corp.* v. *Laundry Co.,* 92 N. H. 260.

By its policy the plaintiff agrees to defend any suit to recover damages because of injury to or destruction of property, even if groundless, but expressly stipulates that this right and duty is "with respect to such insurance as is afforded by this policy," which is the language of the Standard Automobile Liability Policy as revised in 1955. 1955 Proceedings Section on Insurance Law, ABA 48, 53. See DesChamps, The Obligation of the Insurer to Defend, 26 Ins. Counsel J. 580.

The further question raised by the plaintiff's petition, relating to the priority of claims of the defendants, appears to require no extended consideration. The policy authorizes the plaintiff to "make such . . . settlement of any claim or suit as it deems expedient." Its duties to the insured in this regard have been well defined. *Dumas* v. *Hartford &c. Ind. Co.,* 94 N. H. 484. If

it should develop that the pending claims cannot be satisfied within the limit of the policy and doubt should exist concerning the ability of the insured to satisfy any excess, a variety of means of avoiding preferential treatment of individual claims may be thought available. See Keeton, Preferential Settlement, 70 Harv. L. Rev. 27. No ground for establishing priority of any claim over another has been suggested by the briefs, and the plaintiff is under no present obligation to avoid any preference.

The plaintiff is entitled to the relief sought by its petition as herein indicated.

*Remanded.*

All concurred.