**Bernice GREAVES, et al., Plaintiffs,**

v.

**STATE FARM INSURANCE COMPANY, Defendant.**

**No. CIV.A. 97–00522–CKK.**

United States District Court, District of Columbia.

Oct. 21, 1997.

Karl N. Marshall, Ashcraft & Gerel, Washington, DC, for Plaintiff Bernice Greaves.

Eric Steele, Washington, DC, Darlene Wright Powell, Greenbelt, MD, for Plaintiffs Pope, Scruggs.

David W. Goewey, Venable, Baetjer, Howard & Civiletti, LLP, Washington, DC, Kathleen G. Cox, Venable, Baetjer, Howard & Civiletti, LLP, Towson, MD, for Defendant State Farm Ins. Co.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

The parties to the above-captioned matter have filed cross-motions for summary judgment to resolve Plaintiffs' declaratory-judgment action. The single question for the Court to decide is: Whether Plaintiffs' individual injuries suffered during a single fire constitute three separate "occurrences" as that term is defined by the relevant insurance policy that Defendant State Farm Insurance Company (State Farm) issued. Upon considering the pleadings and the applicable law, the Court finds that State Farm is entitled to summary judgment.

## I. BACKGROUND

The material facts are simple and undisputed. On December 26, 1995, Michael Pope and Angela Scruggs were injured, and Thomas J. Shelton, III [1] was killed when a fire consumed an apartment building owned by Weldon McPhail. The Plaintiffs in the present case first filed an action in the Superior Court for the District of Columbia that sought compensation for Mr. McPhail's alleged negligent acts and omissions. *See*

1. Plaintiff Bernice Greaves is the representative of Mr. Shelton's estate.

*Greaves v. McPhail*, 96ca002785 (D.C.Super.Ct.).

At the time of the fire, State Farm insured Mr. McPhail's apartment building. The policy established two separate monetary limitations: $1 million per "occurrence"; and $2 million aggregate for all occurrences during the policy's coverage period. *See* Apartment Policy, Special Form 3, Business Liability and Medical Payments Limits of Insurance, Section 11.2, 3(b). Plaintiffs eventually discovered that State Farm intended to limit its insurance coverage of Mr. McPhail pursuant to the $1 million-single occurrence provision. Believing that their injuries constitute separate occurrences, the Plaintiffs contend that the higher $2 million limitation applies.

On February 14, 1997, Plaintiffs brought suit in the Superior Court for the District of Columbia against State Farm. The Complaint seeks a declaratory judgment that establishes State Farm's potential liability to Mr. McPhail at the aggregate amount of $2 million. State Farm filed a timely notice of removal on March 14, 1997 to this District Court[2] The parties have filed cross-motions for summary judgment on the narrow question of whether State Farm is obligated to insure Mr. McPhail for $1 million or $2 million.

## II. DISCUSSION

Both the Plaintiffs and State Farm assert that the language of the insurance policy is clear, though they reach contradictory conclusions about the import of the policy's language. In the alternative, Plaintiffs have suggested that their interpretation evinces, at the very least, a profound ambiguity in the policy's coverage limitations. Accordingly, the Plaintiffs seek judgment based on *contra proferentem*.

▆▆▆ The Court first will examine the threshold choice-of-law question that the par-

ties have presented; then proceed to reach the merits of the claim. The Court concludes that District of Columbia law controls this controversy, that the policy's language is not ambiguous, and that the $1 million limitation governs State Farm's liability for the damages sustained during the·December 26, 1995 fire.

### A. *Choice of law*

▆▆▆ When sitting in diversity, a federal court must apply the choice-of-law rules of the forum state. *See Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876, 882 (D.C.Cir. 1985), *later proceeding*, 794 F.2d 710 (D.C.Cir.1986), *cert. denied*, 479 U.S. 1060 (1987). The District of Columbia has adopted an "interest analysis" approach to resolve conflict-of-laws questions. *See Stutsman v. Kaiser Foundation Health Plan*, 546 A.2d 367 (D.C.1988). Under this calculus, the trial court's initial obligation is to determine whether there is a "false conflict" between the two putatively contradictory laws. *See Rong Yao Zhou v. Jennifer Mall Restaurant, Inc.*, 534 A.2d 1268 (D.C.1987). A false conflict exists when the laws of different states are: 1) the same; 2) different but would produce the same outcome under the facts of the case; or 3) when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws. *See Biscoe v. Arlington County*, 738 F.2d 1352, 1360 (D.C.Cir.1984). When confronted with a false conflict, a court may "apply the law of the state whose policy would be advanced by the application of its law or forum law if no state's policy would be advanced by application of its law." *Long v. Sears and Roebuck & Co.*, 877 F.Supp. 8, 11 (D.D.C.1995).

▆▆▆ No true conflict of laws exists in the case at bar. Both Maryland and the District

---

2. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) (1994). Diversity is complete, *see Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), because State Farm assumes the Maryland citizenship of its insured, Mr. McPhail. *See* 28 U.S.C. § 1332(c)(1). As for the Plaintiffs, Michael Pope is a citizen of the District of Columbia and Angela Scruggs is a citizen of Virginia. Although

Bernice Greaves is a Maryland resident, because she is acting as the legal representative of Shelton's estate, she is "deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2). Mr. Shelton's District of Columbia citizenship thus preserves complete diversity in this case, and renders subject-matter jurisdiction proper.

of Columbia instruct their courts to determine the plain meaning of the policy language and resolve any actual ambiguities in favor of the insured. *See, e.g., Meade v. Prudential Ins. Co. of America*, 477 A.2d 726, 728 (D.C.1984); *Howell v. Harleysville Mut. Ins. Co.*, 305 Md. 435, 505 A.2d 109, 113 (1986); *see also GEICO v. Fetisoff*, 958 F.2d 1137, 1141 (D.C.Cir.1992); *Continental Casualty Co. v. Cole*, 809 F.2d 891, 896 (D.C.Cir. 1987). The absence of a true conflict compels the application of District of Columbia law by default. *See Fowler v. A & A Co.*, 262 A.2d 344, 348 (D.C.1970).

### B. *The Policy's Language Unambiguously Supports State Farm Interpretation*

The law of the District of Columbia mandates that "[c]lear and unambiguous language [in an insurance policy] should be construed according to its everyday meaning." *Continental Casualty*, 809 F.2d at 896. If, however, a reasonable layperson would be able to attach two plausible meanings to it, the policy is considered ambiguous and must be "construed in favor of the insured wherever reasonable." *Id.* at 895; *see also Gryce v. Lavine*, 675 A.2d 67, 69 (D.C.1996). The Court of Appeals for the District of Columbia has cautioned that "a contract is not rendered ambiguous merely because the parties disagree over its proper interpretation." *Gryce*, 675 A.2d at 69. Moreover, District of Columbia courts "must ever guard against allowing sympathy for a party to produce a result contrary to the clear language of the contractual provisions ... even if done in the name of public policy." *Conesco Indus., Ltd. v. Conforti and Eisele, Inc.*, 627 F.2d 312, 315 (D.C.Cir.1980).

■ The textual nub of the present controversy stems from the policy's provisions governing the limits of insurance. The relevant portions provide:

The most we will pay for all damages because of bodily injury, property damage, personal injury, advertising injury and medical expenses arising out of any one occurrence is the Coverage L—Business Liability limit shown in the Declarations [$1 million]. But the most we will pay for all medical expenses because of bodily injury sustained by any one person is the Coverage M—Medical Payments limit shown in the Declarations [$5,000].

. . . . .

[A]ll other injury or damage, including medical expenses, arising from all occurrences during the policy period is the General Aggregate (Other than PCO) limit shown in the Declarations [$2 million].

Apartment Policy, Special Form 3, Business Liability and Medical Payments Limits of Insurance, Section 11.2, 3(b).

Plaintiffs maintain that each of their injuries constitutes a separate "occurrence," which would trigger the General Aggregate limit of $2 million. To support their interpretation, the Plaintiffs turn to the definitions of "bodily injury" and "occurrence" as provided in the policy. Under the policy, "bodily injury means bodily injury, sickness or disease sustained by a person, including death resulting from the bodily injury, sickness or disease at any time." Apartment Policy, Special Form 3, Definitions, Section II.3. Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage." Apartment Policy, Special Form 3, Definitions, Section II.11(a).

■ Through a series of elaborate and novel feats of syntactical acrobatics, Plaintiffs conclude that even though a single cause is responsible for all damages sustained, *each person* who suffers bodily injury constitutes a separate occurrence under the State Farm policy. The first step in Plaintiffs' linguistic alchemy is to construe the discrete phrase, "by a person," as a limitation of quantity. That is, Plaintiffs assert that by defining bodily injury as injuries "sustained by a person," the policy means that two people cannot suffer bodily injury. Coupling this interpretation, the Plaintiffs maintain that occurrence means an accident in which bodily injury results. If bodily injury encompasses only injury to a single person, then each time a person sustains bodily injury a separate accident occurs or so their theory states. From this syllogism, Plain-

tiffs posit that the general aggregate limit of $2 million governs this case.

This theory, while undoubtedly creative, is not plausible for two reasons: First, both common understanding of these terms and the internal language of the policy itself belie Plaintiffs' interpretation; second, case law reinforces State Farm's position. Turning first to the linguistic and grammatical flaws in their claim, Plaintiffs simply assume that the phrase "by a person" acts as a quantitative limitation, *i.e.*, injury by a single person. However, the only reasonable interpretation of that phrase suggests that it functions as a qualitative limitation. That is to say, the policy employs the phrase "by a person" to clarify that it is human bodily injury to which the policy's protections extend.

Moreover, the internal language of the policy buttresses the interpretation of "by a person" as a qualitative, not quantitative limitation. In the paragraph that sets forth the per-occurrence limit of coverage, the policy provides that "the most we will pay for all medical expenses because of bodily injury sustained by *any one person* is [$5,000]." Apartment Policy, Special Form 3, Section II.2. Here, the policy clearly employs language of a quantitative nature by referring to "one person." This precise numerical limitation stands in stark contrast to the indefinite article "a person." To sanction Plaintiffs' interpretation of the phrase "a person" would create an awkward internal tension within the policy by suggesting that the policy's drafters used the imprecise "a person" and the specific "any one person" synonymously.

Plaintiffs' interpretation of occurrence leads to an additional internal oddity. The policy provides that "[t]he most we will pay for all damages because of bodily injury . . . arising out of any one occurrence is [$1 million]." Apartment Policy, Special Form 3, Business Liability and Medical Payments Limits of Insurance, Section II.2, 3(b). If, as Plaintiffs maintain, every instance of bodily injury constitutes a separate occurrence, the above-quoted portion of the policy would be rendered mere surplusage. Indeed, the very construction of that sentence unmistakably indicates that multiple bodily injuries may result from a single occurrence. Both state and federal courts similarly have rejected arguments akin to the one that Plaintiffs have presented by noting that, as here, the insurance policy spoke in terms of injury or damage "arising out of" an occurrence. *See, e.g., Chemstar, Inc. v. Liberty Mut. Ins. Co.*, 797 F.Supp. 1541, 1546–48 (C.D.Cal.1992), *aff'd*, 41 F.3d 429 (9th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 1847, 134 L.Ed.2d 948 (1996); *CSX Trans., Inc. v. Continental Ins. Co.*, 680 A.2d 1082, 1092 (Md. 1996).

Looking now to other jurisdictions, the vast majority of them have construed the term "occurrence," as used in insurance policies, to refer to "the cause or causes of the damage [or injury] and not to the number of injuries." *Michigan Chem. Corp. v. American Home Assurance Co.*, 728 F.2d 374, 379 (6th Cir.1984); *see, e.g., Mead Reinsurance v. Granite State Ins. Co.*, 873 F.2d 1185, 1188 (9th Cir.1988); *CSX Trans., Inc. v. Continental Ins. Co.*, 680 A.2d 1082, 1091 (Md.1996). *See generally id.* (citing cases from numerous federal and state jurisdictions that reached similar conclusion). Although a small minority of courts have held that an occurrence is calculated by reference to the number of injuries, *see Anchor Casualty Co. v. McCaleb*, 178 F.2d 322, 324–25 (5th Cir.1949); *Lombard v. Sewerage & Water Bd.*, 284 So.2d 905, 915–16 (La.1973), subsequent decisions from these same courts either repudiate their earlier holdings or modify them to such an extent as to render their persuasive value de minimis. *See Saint–Paul Mercury Indem. Co. v. Rutland*, 225 F.2d 689, 693 (5th Cir.1955) ("We are convinced that the language in *Anchor* to the effect that a separate accident occurs with respect to each owner of damaged property was not necessary in the opinion"); *id.* (finding only one occurrence where there existed only one cause despite damage accruing to sixteen rail cars); *Whetstone v. Dixon*, 616 So.2d 764, 773–74 (La.Ct. App.1993) (finding only one occurrence where single automobile accident caused two different bodily injuries).

Although the Court of Appeals for the District of Columbia has not had the opportunity to address this issue, this Court finds

no reason to part company from the overwhelming number of courts that have defined occurrence by reference to the cause of the injury, not the damage sustained. Of perhaps even greater importance "is the view of the Maryland courts, since it is to Maryland law that the courts of this jurisdiction look for guidance when there is no controlling District of Columbia case." *GEICO v. Fetisoff*, 958 F.2d 1137, 1143 (D.C.Cir.1992); *see also Hull v. Eaton Corp.*, 825 F.2d 448, 453–54 (D.C.Cir.1987) ("[W]hen there is no District of Columbia law on point we look to Maryland law for guidance"); *Walker v. Independence Fed. Sav. & Loan Ass'n*, 555 A.2d 1019, 1022 (D.C.1989) (same). In *CSX Transportation*, the Maryland Court of Appeals adopted the "cause test." *See CSX Transportation*, 680 A.2d at 1091–92. In the absence of direct authority from the Court of Appeals for the District of Columbia, this Court adopts the *CSX Transportation* court's conception of occurrence.

 Recognizing that their interpretation may not be authoritative, Plaintiffs claim that, at the very least, it creates a sufficient ambiguity that must be resolved in their favor.[3] Mere disagreement over the meaning of an insurance provision, however, does not render the policy ambiguous. *See Gryce*, 675 A.2d 67, 69 (D.C.1996) ("[A] contract is not rendered ambiguous merely because the parties disagree over its proper interpretation."); *cf GEICO v. Fetisoff*, 958 F.2d 1137, 1144 (D.C.Cir.1992) ("[U]nartful drafting does not a 'real ambiguity' make; if it did, then surely almost every contract would be vulnerable on *contra proferentem* grounds."). District of Columbia law considers a policy to be ambiguous only, if after according the language its common everyday meaning, it appears "reasonably susceptible to two different readings by an ordinary layperson." *Id.* at 1141; see also *Continental Casualty Co. v. Cole*, 809 F.2d 891, 896 (D.C.Cir.1987); *Meade v. Prudential Ins. Co. of America*, 477 A.2d 726, 728 (D.C.1984). As discussed previously, the Court finds the language of the policy to be clear and unambiguous. Additionally, the Court notes that the language is to be read in terms of what a reasonable layperson would understand. *See GEICO*, 958 F.2d at 1141. The various verbal contortions and loose syllogisms that predicate Plaintiffs' argument are not the currency of layperson thought; instead, Plaintiffs' argument reflects the skilled thought process of counsel. There is little reason to suspect that their theory resonates clearly with laypersons.

 Lastly, the Plaintiffs suggest for the first time in their Reply Memorandum that multiple occurrences exist even under a cause test. Without legal citation, Plaintiffs aver that in addition to the fire, each negligent act or omission that Mr. McPhail allegedly perpetrated constitutes either a separate occurrence or "cumulatively they certainly have the effect of a single occurrence." Pls.' Reply at 12. Plaintiffs, however, cannot escape the logic and result of the cases that they attempt to distinguish. In *Travelers Indemnity Co. v. New England Box Co.*, 102 N.H. 380, 157 A.2d 765 (1960), the New Hampshire Supreme Court determined that a single fire that resulted in multiple instances of property damage constituted a single occurrence. *Id.* at 768–69. Despite its seeming incongruity with Plaintiffs' argument, *Travelers*, it is urged, implicated a situation "in which the fire was the sole cause of the injury suffered." Pls.' Reply at 9. In contrast, Plaintiffs believe that the alleged negligence of the insured in the case at bar provides an additional occurrence. This attempt at distinguishing *Travelers* is specious. As the Plaintiffs themselves admit, the fire at issue in *Travelers* "was negligently set by the insured party." Pls.' Reply at 9; *see also Travelers*, 157 A.2d at 765 (stating that fire was "negligently kindled and managed by the defendant Box Company as [sic] its premises in Madison, N.H."). Accordingly, the Court rejects Plaintiffs' alternative argument for the existence of multiple occurrences.

---

3. Although it recognizes the traditional rule that ambiguities are to be resolved against the drafter of a policy, State Farm argues that Plaintiffs are not entitled to that liberal rule because they are not the insured. Because the Court does not find that the policy is ambiguous, it does not reach the merits of State Farm's contention.

**18**

### III. CONCLUSION

For the foregoing reasons, the Court shall enter final judgment in favor of Defendant State Farm in the above-captioned case.