**Mamie Ellis McQUATER, Appellant,**

v.

**AETNA INSURANCE COMPANY, an insurance corporation, Appellee.**

**No. 5847.**

District of Columbia Court of Appeals.

Argued Nov. 2, 1971.

Decided Feb. 29, 1972.
Rehearing and Rehearing En Banc
Denied March 31, 1972.

Leonard Z. Bulman, Washington, D. C., for appellant.

William J. Donnelly, Jr., Washington, D. C., with whom Richard W. Galiher, William H. Clarke and Frank J. Martell, Washington, D. C., were on the brief, for appellee.

Before FICKLING, GALLAGHER and PAIR, Associate Judges.

GALLAGHER, Associate Judge:

Appellant, Mamie Ellis McQuater, contests a judgment of the trial court denying her recovery under a fire insurance policy with appellee, Aetna Insurance Company (Aetna). The trial court in this nonjury case found that the policy had been validly cancelled prior to the destruction of appellant's property.

On April 29, 1965, appellant obtained several insurance policies with appellee through National City Company (National), agent for Aetna. Among the policies acquired was a fire insurance policy which extended for three years, that is, until April 29, 1968. This policy covered a business, Me & Me Beauty Service, owned by appellant which was destroyed by fire during the civil disturbances in early April 1968. The refusal of appellee to pay appellant's claim for damages caused by the fire resulted in this litigation.

At trial, appellant testified concerning the acquisition of the policy stating that she had at no time prior to the fire in 1968 received any notification of the policy's cancellation. The mortgagee of the premises also testified that he had never received notification of the policy cancellation.

The president of National (Mr. Needham), testifying on behalf of Aetna, stated that National was a policy writing agent for Aetna and a general agent, and had received the authority from Aetna to cancel insurance for it. He further testified that he had general instructions from Aetna to

cancel any policy upon which National had insufficient information "to stand the risk." Mr. Needham said he cancelled all appellant's policies, including the one for fire insurance, because he had been unable to obtain adequate information concerning her facilities; and, additionally, appellant had fallen behind on premium payments on her "open account", which encompassed the other policies as well.[1]

The office manager of National testified that she had mailed notices of cancellation to appellant on October 8, 1966 in window envelopes, that the envelopes contained a return address for National, and that these documents had never been returned. The superintendent of the Friendship Branch of the United States Post Office identified "patron's receipts of mailing" stamped on copies of the notices of cancellation which had been addressed to Mrs. McQuater indicating that letters had been mailed to her from National on October 8, 1966.[2]

The court ruled in favor of Aetna stating that National had authority to cancel the policies on behalf of Aetna, that the presumption of receipt raised by proper mailing had not been overcome, and that it was satisfied that "proper notice was mailed *and was received* by plaintiff and also Mr. Knott." (Emphasis supplied.)

On appeal, appellant contends that: (1) Aetna failed to establish that National had authority to cancel the policy; and (2) assuming National had such authority, there was insufficient proof that the policy had actually been cancelled prior to the date of loss.

The basis of appellant's claim that Aetna failed to establish the authority of National to cancel the policy is the absence in the record of any written evidence of the right to cancel. There was, however, uncontradicted testimony by its president that National was a "general agent"[3] of Aetna, had authority to cancel policies for Aetna, and, more specifically, had instructions to cancel policies for Aetna if National's "underwriting information is insufficient to stand the risk."

Appellant argues, however, that "no written evidence of authority was ever *proffered* or shown as required by District of Columbia Code, Chapter 13, Title 35, Section 1303"[4] and, further, that the president of National admitted he had no written authority to cancel "the subject policy."[5] (Emphasis supplied.)

Appellant is incorrect in saying that no written authority from Aetna was proffered. During the course of closing argument by appellant in this nonjury trial, ap-

---

1. Although the full premium had been paid on the particular policy involved in this case, National maintained an "open account" for appellant in which individual policies or premium payments were charged against the entire account.

2. As stated, window envelopes were used thus showing that a document addressed to her was contained inside.

3. "Ordinarily, a general agent of an insurance company stands in its stead in conducting its business, and has authority coextensive with that of the principal." 16 Appleman, Insurance Law and Practice § 8693 at 190 (1968). "Where an agent has general authority to effect contracts of insurance, to carry on the business of his agency, and to do all necessary and proper things in the prosecution thereof, it follows, as a necessary incident of such authority, that he has power to fix rates of premium, to give consent to the increase of risks and change of occupation of buildings insured, *to cancel policies* on account of increase of risks . . . but such implied authority is, however, subject to limitations imposed by his principal, and known to those with whom he deals." 3 Couch on Insurance 2d § 26:54, at 520 (reprint 1963) (emphasis supplied).

4. The pertinent provision of this statute defines a "policy writing agent" and requires written authorization from the insurance company to function as such an agent. We do not view this provision as having any material significance in relation to this issue.

5. Appellant also asserts that Aetna did not participate in any cancellation. This is immaterial since we uphold National's authority to cancel on Aetna's behalf.

pellee asserted surprise that appellant was arguing lack of authority by National to cancel and offered to introduce into evidence National's "written contract", which proffer went unheeded. It is true that National's president stated he had received no written authority to cancel the policy in question but this has no significance because it is evident that his answer related to the lack of specific written authority to cancel this particular policy rather than written authority to cancel policies generally.

 The trial court found that the authority to cancel "was not raised substantially" and concluded from the testimony that National had the authority to cancel. While it would have been preferable if appellee had effectively removed this issue from the case by the introduction of written authority, we are unable to conclude the trial court's finding was clearly erroneous in the face of National's uncontradicted testimony that it had the authority.[6]

Regarding appellant's second contention that there was insufficient proof of the policy's cancellation, we observe the presumption in the District of Columbia that letters mailed through the United States Post Office are delivered. Fort Stevens Pharmacy v. Hollywood Credit Clothing Co., D.C.Mun.App., 126 A.2d 309 (1956). This presumption is rebuttable, and evidence that the addressee did not receive the mail will raise a question for the trier of facts as to actual receipt. Columbia Finance Co. v. Worthy, D.C.Mun.App., 141 A.2d 185 (1958). Here, testimony by appellant and the mortgagee that they never received the notices was sufficient to raise a question of fact concerning receipt of the notices of cancellation but this question was resolved in favor of appellee. The trial court expressly found that appel-

lant received the notices of cancellation, and as this determination involved substantially an assessment of credibility, we find no basis for reversal[7] of the trial court's finding.

Affirmed.

---

6. D.C.Code 1967, § 17–305 (Supp. IV, 1971).

7. Since the trial court found that a notice of cancellation was actually received by Mrs. McQuater, we need not consider whether under the terms of the policy merely mailing the notices would be sufficient to cancel the policies.