Carlton VAULX, Appellant,

v.

CUMIS INSURANCE SOCIETY,
INC., Appellee.

No. 13201.

District of Columbia Court of Appeals.

Argued Nov. 14, 1978.

Decided Aug. 8, 1979.

Jeffrey P. Ayres, Baltimore, Md., with whom John E. Scheuermann, Washington, D. C., was on brief, for appellant.

Anthony J. Trenga, Washington, D. C., with whom Leonard C. Greenebaum, Washington, D. C., was on brief, for appellee.

Before GALLAGHER, NEBEKER, and FERREN, Associate Judges.

FERREN, Associate Judge:

■ This case presents the question whether an insurance carrier properly terminated an automobile insurance policy for failure of the insured to comply with the terms of a reinstatement offer. The carrier received the premium by the date it had required for reinstatement. When the insured mailed his payment, however, he did not include the detachable portion of the offer identifying the policy by the insured's name and number, as the carrier had requested. The trial court granted summary judgment for the carrier, holding that the request for return of the detachable portion of the offer was an "express and material term," and that the insured, by failing to return it, had not accepted the offer despite tendering the premium on time. We hold, to the contrary, that return of the detachable portion was not material to acceptance, that the insured complied with the terms of the reinstatement offer, that the carrier broke its agreement by terminating the pol-

icy, and that the insured accordingly is entitled to recover any damage attributable to the carrier's breach. We therefore reverse and remand for further proceedings.

### I.

Appellant Carlton Vaulx is a defendant in an action to recover damages for personal injuries from an automobile accident allegedly caused by his negligence. The negligence issue has been stayed pending determination of whether the intervenor, Cumis Insurance Society, Inc. ("Cumis"), can be held liable on an insurance contract with Vaulx.

On December 16, 1974, Cumis notified Vaulx that it would terminate his insurance policy if he did not pay his premium by January 16, 1975. When Vaulx failed to pay by that date, Cumis sent him notice that his policy had been terminated but offered to reinstate the policy if Cumis received Vaulx's premium, in full, by January 31, 1975. The reinstatement offer, which is reproduced in the Appendix, included the following:

### IMPORTANT NOTICE

YOUR POLICY HAS TERMINATED. YOUR POLICY WILL BE REINSTATED WITHOUT ANY LOSS OF COVERAGE TO YOU ONLY ON CONDITION THAT THE PREMIUM IS RECEIVED BY 01/31/75.

The lower, detachable portion of this offer identified the policy by number and by name of policy holder. The words "PLEASE MAIL THIS COPY WITH YOUR REMITTANCE" appeared below Vaulx's name and address in all caps, in smaller type than the notice statement above.

On January 28, 1975, Vaulx mailed Cumis a money order for $103, the full premium amount. Cumis date-stamped it received on January 31, 1975. Vaulx did not send the lower detachable portion, nor did he

identify his payment by his policy account number. His name and address, however, appeared on the money order. Cumis did not ascertain Vaulx's account number or the purpose of the payment until February 11, 1975. In the meantime, Vaulx's policy was terminated. On March 5, 1975, Cumis issued a premium refund check to Vaulx (postmarked March 7) labeled "Refund-Due to Cancellation." On March 7, 1975, Vaulx was involved in the automobile accident which underlies the negligence suit. On March 10, 1975, Vaulx reported the accident to Cumis and also cashed the refund check. On March 12, 1975, Vaulx obtained automobile insurance from another carrier.

Six months later, on September 8, 1975, Cumis offered to rewrite Vaulx's policy of insurance, retroactively, for the period covering January 16, 1975 through July 16, 1975 (thereby covering the accident), on the condition that Cumis receive payment of the $103 premium before September 23, 1975. In a letter dated September 12, 1975, Vaulx informed Cumis that he had already obtained insurance with another company and that he was "afraid" to deal with Cumis. On September 23, 1975, Cumis sent Vaulx a second written offer to reinstate the insurance policy, if Vaulx paid the premium by September 30, 1975. Vaulx did not respond.

On November 13, 1975, plaintiffs filed the negligence action against Vaulx, in which Cumis later intervened.[1] Vaulx counterclaimed against Cumis and, on September 12, 1977, filed a motion for partial summary judgment on the theory that he had complied with the reinstatement offer and that

Cumis, accordingly, had committed a breach of contract in terminating the policy.[2] Cumis filed a cross-motion for summary judgment on its complaint for a declaratory judgment that it was under no duty to Vaulx under the policy or otherwise.

The trial court agreed with Cumis that that statement "PLEASE MAIL THIS COPY WITH YOUR REMITTANCE" was an "express and material term" of the reinstatement offer. The court ruled that Vaulx failed to comply with this direction or otherwise identify his policy account number, and thus failed to accept the offer. The policy accordingly lapsed.

## II.

We conclude that the trial court erred in finding that the request to return the detachable portion was an express and material term of the reinstatement offer. We agree with Vaulx's argument that this is merely suggestive language. Accordingly, because Cumis received Vaulx's full premium payment by the specified date, Vaulx validly accepted the offer, a contract was formed, and Cumis committed a breach by failing to reinstate the policy retroactively, as the offer had proposed.

More specifically, we note, initially, that an offeror is entitled to prescribe an exclusive method of acceptance, and that an offeree who purports to accept in any other method will be held to have made a counter-offer, not a binding acceptance. *See Carr v. DuVal,* 39 U.S. (14 Pet.) 77, 82–83, 10 L.Ed. 361 (1840); *Tracy v. Disman,* D.C. Mun.App., 137 A.2d 217, 219 n.1 (1957)

---

1. Initially, Cumis filed a declaratory judgment action in the United States District Court for the District of Columbia, but Cumis and Vaulx agreed to a dismissal conditioned upon the Superior Court's permitting Cumis to intervene in the present action.

2. In his counterclaim against Cumis, Vaulx had also alleged that Cumis had been negligent in notifying Vaulx that his insurance policy had been terminated. In a timely motion to amend the grant of summary judgment, Vaulx restated his negligence theory to the following effect:

even if there were no contract obligating Cumis to reinstate his policy, Cumis had—and violated—a duty to notify Vaulx promptly if it received the reinstatement premium after the expiration of the reinstatement offer. Neither party moved for summary judgment on this theory. The trial court nevertheless dismissed the negligence count with prejudice, without making findings of fact. Given our disposition on the breach of contract issue, we need not deal with Vaulx's negligence theory.

(quoting *Iselin v. United States,* 271 U.S. 136, 139, 46 S.Ct. 458, 70 L.Ed. 872 (1926)); Restatement of Contracts § 59 (1932). But when the offer, as fairly interpreted, merely suggests—without explicitly directing—a particular method of acceptance, the offer can be accepted in any reasonable manner. *See Durasteel Co. v. Great Lakes Steel Corp.,* 205 F.2d 438, 442 (8th Cir. 1953); *U. S. Ore Corp. v. Commercial Transport Corp.,* 369 F.Supp. 792, 795–96 (E.D.La.1974); Restatement of Contracts § 61 (1932). Here, Cumis was explicit in stating that there could be reinstatement without loss of coverage "only on condition that the premium is received by 01/31/75"—which everyone agrees occurred here. No other "condition" was expressly stated; Cumis merely requested that Vaulx "please" send the detachable portion with his remittance.

A reasonable policy holder, looking at this reinstatement offer (*see* Appendix), would be impressed by the "IMPORTANT NOTICE" expressly conditioning reinstatement on Cumis' receipt of the premium by January 31, 1975, but not by the smaller-typed request, placed inconspicuously at the bottom of the page, to return the detachable portion. In fact, given the mandatory language of the "condition," the latter request, by contrast, implies no absolute need to comply.[3]

■ Cumis, as offeror and drafter of the terms of acceptance, bears the risk of using ambiguous language and format.

*See American Insurance Co. v. Tutt,* D.C. App., 314 A.2d 481, 484–85 (1974); *Holt v. George Washington Life Insurance Co.,* D.C.Mun.App., 123 A.2d 619, 621–22 (1956); *Buchanan v. Massachusetts Protective Association,* 96 U.S.App.D.C. 144, 146, 223 F.2d 609, 611, *cert. denied,* 350 U.S. 833, 76 S.Ct. 67, 100 L.Ed. 743 (1955); 4 Williston on Contracts § 621, at 760–61 (3d ed. 1961). It could have expressly required return of the detachable portion as a second, mandatory condition of acceptance if this particular way of identifying the sender with the policy number is essential to expedited handling of policies in Cumis' computerized accounting system.[4]

■ This resolution of ambiguities against the party who drafted the terms of the offer is especially suitable in the case of insurance contracts. It helps serve the important public policy function of protecting innocent victims of automobile accidents against uninsured motorists. *See generally Van Hulle v. State Farm Mutual Automobile Insurance Co.,* 44 Ill.2d 227, 232–33, 254 N.E.2d 457, 461 (1960). Moreover, when it is so easy for an insurance carrier, which drafts the form of offer and the policy, to be clear about conditions, it would not be proper to construe an ambiguity in the carrier's favor, given all the interests at stake. If we were to agree with the result reached by the trial court, the carrier would have the unilateral power—*after* timely receipt of a premium—to determine whether or not it desired a contractual relationship with

---

**3.** In *Durasteel, supra,* the court held the following statement of the offeror to be merely a permitted method of acceptance, not a material term of the offer: "We will very much appreciate your sending through your acknowledgments on these orders as quickly as possible." *Id.* at 442. Similarly, in *U. S. Ore Corp., supra,* the court held the following offeror's statement did not prescribe the sole method of acceptance: "If the foregoing meets with your approval, please signify your acceptance by signing in the space provided and returning one copy to us for our files." *Id.* at 795.

**4.** Cumis argues that only if the premium is accompanied by proper identification—*e. g.,* the detachable portion—can it credit a policy

holder's account on the day the premium is received. Vaulx's failure to send the detachable portion or otherwise to identify his account resulted in Cumis' inability to identify the payment on January 31, 1975, the deadline date. We do not doubt this representation; but if a carrier cannot ascertain the purpose of a premium payment without the information contained in the detachable, identifying portion of the reinstatement offer, it should so inform its policy holders, perhaps with some form of "IMPORTANT NOTICE" equivalent to the notice of the deadline for receiving payment. It cannot properly shift the risk of delay in crediting an account (inherent in its computerized accounting system) to an unsuspecting policy holder.

the insured; thus, the carrier would be able to escape liability even though it had retained the premium payment, knew the identity of the insured, and was aware of an automobile accident.

### III.

█ It follows that, given Cumis' breach of the contract, Vaulx is entitled to sue for damages for total breach. *See Peters v. Blagden Homes, Inc.,* D.C.Mun.App., 151 A.2d 183 (1959).

Cumis argues, to the contrary, that by mailing a refund check on March 7, 1975, it can be charged, at worst, with "anticipatory repudiation" of the contract, *i. e.,* it cannot be deemed to have committed a breach until it fails to pay a judgment. It follows, according to Cumis, that Vaulx's failure to accept its later offers of September 8 and 23, 1975, for retroactive coverage—including coverage of the March 7 accident before plaintiff had brought suit—was an abandonment of the policy, estopping Vaulx from making a claim based on the first reinstatement offer.[5]

This argument is flawed, however, because the automobile accident—the event which Vaulx should have been insured against—occurred *before* Cumis' second series of reinstatement offers in September, 1975, when Vaulx allegedly abandoned the Cumis policy. Understandably, Vaulx was unwilling to deal further with Cumis once it had terminated his policy and sent him a premium refund check at the time of his accident. It was not unreasonable for Vaulx to obtain coverage immediately with another carrier; thus, he should not be expected, six months later, to purchase a second, duplicate policy with Cumis. Under the circumstances, we cannot say that Vaulx "abandoned" his relationship with Cumis. To the contrary, Cumis abandoned the relationship with Vaulx, who properly exercised the right to sue Cumis for a total breach.

### IV.

Accordingly, we reverse and remand for entry of judgment in favor of appellant Vaulx on the contract issue.

*So ordered.*

---

5. Cumis argues, in addition, that Vaulx's failure to notify Cumis about the plaintiffs' lawsuit, as well as his payment to third parties in connection with the accident—both contrary to the terms of the policy—are additional manifestations of abandoning the policy.

# APPENDIX

 

## CUMIS INSURANCE SOCIETY, INC.

### REINSTATEMENT OFFER

1/16/75

| | POLICY NUMBER |
|---|---|
| | SA445806 |
| | 102 98 3014 |
| | 008 0144 5 |

**CURRENT POLICY PERIOD**

| | |
|---|---|
| EFFECTIVE | 01/16/75 |
| EXPIRATION | 07/16/75 |

12.01 A.M. EACH DATE

CARLTON VAULX
4264 BENNING RD NE
WASHINGTON DC 20019

### VEHICLE DESCRIPTION

| CAR NO | YEAR | MAKE | SERIAL | CLASS | SYMBOL OR COST NEW | COVERAGE LIABILITY SINGLE LIMIT | PHYSICAL DAMAGE COLLISION | COMP | NET PREMIUMS BY CAR |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | |
| 2 | | | | | | | | | |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |

TRAILER

*See your policy for complete description of Part I coverages and limits.

SUPPLEMENTAL COVERAGE

| | ENDORSEMENT PREMIUM | |
|---|---|---|
| **IMPORTANT NOTICE** | PRIOR PERIODS | CURRENT PERIOD |

YOUR POLICY HAS TERMINATED.
YOUR POLICY WILL BE REINSTATED
WITHOUT ANY LOSS OF COVERAGE
TO YOU ONLY ON CONDITION THAT
THE PREMIUM IS RECEIVED BY
01/31/75.

| | |
|---|---|
| PRIOR BALANCE OR PAYMENTS | 103.00 |
| NET PREMIUM DUE | 103.00 |

KEEP THIS COPY FOR YOUR RECORDS

**PAY THIS AMOUNT**

## CUMIS INSURANCE SOCIETY, INC.

CARLTON VAULX
4264 BENNING RD NE
WASHINGTON DC 20019
PLEASE MAIL THIS COPY WITH YOUR REMITTANCE

VAULX    SA445806

103.00

**PAY THIS AMOUNT**

---

**ANY CHANGES?** Please report any errors or changes in drivers, vehicles, address or usage by calling the toll-free number of your state listed below.

| | |
|---|---|
| 1 800-356 8151 (AL, DE, FL, GA IL, IA, LA NB, NJ, NY, NO, OH, OK PA, RI, SC, SD, TN, VT, VA, WV) | **WESTERN STATES** |
| 1 800 356-8127 (AR, IN, KS, KY, MO) | 1-800 854 7721 (AZ, CO, ID NV, NM, UT, WY) |
| 1-301-621-1976 (DC)  1-301-668-8700 (MD) | 1-800-472 7269 (CA) |
| 1-608 238-0603 (WI)— Call Collect | 1-800-854 7764 (MT) |
| Call between 8 00 A M to 8 00 P M. CST Monday through Friday and 8 00 A M to 4 00 P M CST Saturday | Call between 8 00 A M to 5 00 P M. PST Monday through Friday |