**John P. MEADE, Appellant,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellee.**

No. 83–678.

District of Columbia Court of Appeals.

Argued April 3, 1984.

Decided June 27, 1984.

John P. Meade, pro se.

Charles H. Fleischer, Washington, D.C., with whom Randall C. Smith, Washington, D.C., appeared on the brief, for appellee.

Before FERREN and BELSON, Associate Judges,[*] and KERN,[**] Associate Judge, Retired.

BELSON, Associate Judge:

This appeal concerns interpretation of an exclusion provision in a medical insurance contract. The trial judge ruled that the provision excluded from coverage certain charges for crowns and inlays the insured incurred.

The parties did not dispute the facts before the trial court. Appellant suffered from temporomandibular joint syndrome

---

[*] Associate Judge Terry was a member of the division that heard oral argument, but he subsequently withdrew from the case. Associate Judge Ferren was chosen by lot to replace him.

[**] Judge Kern was an Associate Judge at the time of argument. His status changed to Associate Judge, Retired, on May 25, 1984.

(TMJS), an inflammation of the jaw joint due to improper alignment of the upper and lower jaws. A dentist, an oral surgeon, treated appellant's TMJS in two stages. First, the dentist inserted a plastic splint in appellant's mouth. The splint brought appellant's jaws into the correct alignment. In order to make the new alignment permanent, the dentist, at the second stage, could have installed either a steel splint or crowns and inlays. Appellant and his dentist chose the latter. The treatment was successful.

Prudential reimbursed appellant for the cost of the splint, but denied liability for the costs of the crowns and inlays. The company said that the charges for the crowns and inlays fell within the "Mouth Conditions Charges" exclusion in the policy. That exclusion reads:

Generally Excluded Charges:

. . . .

Mouth Conditions Charges—charges for Physicians' services or x-ray examinations in connection with mouth conditions due to periodontal or periapical disease, or involving any of the teeth, their surrounding tissue or structure, the alveolar process or the gingival tissue; unless the charges are in connection with the treatment or removal of malignant tumors and would, except for this part (6), be covered under the coverage.

Appellant sued the company in Superior Court for the charges, arguing that the exclusion's language did not cover the $4,075.10 at issue. On cross-motions for summary judgment, the trial court ruled that as a matter of law the company's construction of the exclusion's language was more reasonable than appellant's. He granted summary judgment for the company.

We consider the exclusion's language ambiguous. The parties' arguments focus on the phrase "involving any of the teeth" and the question of what previous words that phrase modifies. Appellant's interpretation connects "involving" with "mouth conditions." Under his reading, the policy would exclude

Mouth Conditions Charges—charges for Physicians' services or x-ray examinations in connection with mouth conditions [1] ] due to periodontal or periapical disease,

or

[2] ] involving any of the teeth, their surrounding tissue or structure, the alveolar process or the gingival tissue.

The charges for correcting TMJS would be compensable under appellant's construction, because TMJS is not a mouth condition involving the teeth, but rather a condition of the jaws. The company argues that "involving any of the teeth" describes "charges for services." Thus, under the company's reading, the policy would exclude

Mouth Condition Charges—charges for Physicians' services or x-ray examinations

[1] ] in connection with mouth conditions due to periodontal or periapical disease,

or

[2] ] involving any of the teeth, their surrounding tissue or structure, the alveolar process or the gingival tissue.

Because insertion of crowns and inlays is a service involving the teeth, the company's reading would exclude charges for that service.

Appellant's construction appears to us the more reasonable. We are not persuaded by the company's argument that the exclusion must link "involving" with "charges" because all the policy exclusions focus on charges. The mouth conditions exclusion's general concern with charges does not dictate the interpretation of the detailed language defining what sorts of charges will be excluded. Indeed, appellant's construction preserves the focus on charges; charges for services connected with mouth conditions will be excluded, with one sort of mouth condition being a condition involving the teeth.

Appellant can also draw some support for his construction from *Goss v. Medical Service of the District of Columbia,* 462 A.2d 442, 443–46 (D.C.1983), even though *Goss* concerned whether TMJS-related crown and inlay costs came within a policy exclusion for "dentistry" rather than one for "mouth conditions charges." We held in *Goss* that TMJS is not a condition of the teeth, 462 A.2d at 446, and we looked to the purpose of the services (correction of a jaw condition), rather than the nature of the services (work on the teeth), to determine coverage, 462 A.2d at 445.

But we need say no more than that Prudential's policy exclusion is ambiguous. While the company may exclude TMJS-related charges from coverage if it wishes, it must do so clearly. Ambiguous language in an insurance contract will be construed against the company. *E.g., Vaulx v. Cumis Insurance Society, Inc.,* 407 A.2d 262, 265 (D.C.1979).[1] Thus, as a matter of law, we must construe the policy exclusion as appellant does.

The company stipulated at oral argument before this court that if we ruled that the policy covered appellant's crown and inlay charges, then appellant would be entitled to $4,075.10, the amount he sued for. We therefore remand this case to the trial court with directions to enter judgment for appellant in the amount of $4,075.10 and appropriate interest and costs.

*So ordered.*

---

1. Prudential argues that this rule should not benefit an insured that bargained from strength and at arm's length with the insurance carrier before entering the contract. Prudential made no showing in the trial court about the nature of the negotiations that led to the contract in question. We cannot, therefore, consider that argument on this record. In any event, contractual language is generally construed against the drafter of the language. *Vaulx,* 407 A.2d at 265; 4 Williston on Contracts § 621 at 760–61 (3d ed. 1961). In the absence of a showing to the contrary, we may assume that the insurer drafted the language.