Janice L. MUELLER, Appellant,

v.

HEALTHPLUS, INC., Appellee.

No. 89–997.

District of Columbia Court of Appeals.

Argued March 6, 1991.
Decided April 23, 1991.

Michael J. Mueller, Washington, D.C., for appellant.

Timothy E. Howie, with whom Erroll D. Brown was on the brief, Upper Marlboro, Md., for appellee.

Before ROGERS, Chief Judge, FERREN, Associate Judge, and KERN, Senior Judge.

ROGERS, Chief Judge:

Appellant Janice L. Mueller appeals from the judgment holding that appellee Healthplus, Inc., is not liable for payment of her medical expenses under a group insurance policy offered through her employer, Washington Center for Aging Services. She contends that the trial judge erred in ruling that Healthplus had complied with the cancellation provision of the policy by giving notice to her employer without directly notifying her. We agree; accordingly we reverse.[1]

---

1. In view of our disposition, we do not reach appellant's contention that she would be entitled to recover from Healthplus even if it had given proper notice because her expenses arose in connection with a medical condition that commenced while the policy was in effect, and her right to reimbursement of her medical expenses had vested. *See generally Keene Corp. v. Insurance Co. of North Am.,* 215 U.S.App.D.C. 156, 165, 667 F.2d 1034, 1043 (1981) (where lack of clarity in insurance contract, applying general principles interpreting contract in favor of the insured under contingent event vested right the-

## I.

The relevant facts are not in dispute. In January 1988, appellant enrolled as a subscriber in Healthplus, Inc.'s group insurance policy, which was offered through her employer, Washington Center for Aging Services (WCAS). On January 23, 1988, she was diagnosed by her gynecologist, Dr. Oweiss, as having an infection. The infection was recurrent through August 1988, and required treatment through September 1988. On March 8, 1988, appellant was diagnosed as having a cervical Nabothian cyst, which was removed on April 18, 1988, by Dr. Oweiss. Appellant thereafter required treatment for symptoms associated with the removal of the cyst through June 1988.

On February 12, 1988, Healthplus sent a letter to WCAS's insurance liaison, Becky Mays, stating that "Healthplus regrets to inform you that it will not be submitting a proposal to Washington Center for the Aging to renew our contract for provision of health care services." WCAS, through its Director of Personnel, issued a memorandum thirteen days later to those employees enrolled in Healthplus stating that "[e]ffective April 1, 1988, Healthplus will no longer provide medical services for WCAS/Urban Shelters employees who are now covered by the plan.... [Y]ou must select another carrier to provide medical services during the open enrollment period beginning March 15, 1988."

WCAS conducted a seminar on March 15, 1988, regarding available health care options. Appellant was in attendance as were representatives from three group plans, MDIPA, Kaiser–Permanente, and Group Health Association. All three plans offered coverage of pre-existing illnesses, but would not have allowed appellant to retain Dr. Oweiss as her treating physician.[2] Appellant testified that Dr. Oweiss advised her not to change physicians on the eve of surgery and in the middle of treatment. Representatives from a fourth

group plan that WCAS was offering, Prudential Insurance Company, did not attend the seminar. Appellant testified that she was advised by Becky Mays that only the Prudential plan would allow her to keep her own doctor.

Appellant eventually elected coverage with Prudential, retaining Dr. Oweiss as her physician. When she submitted a reimbursement request to Prudential for her expenses after April 1, 1988, Prudential denied them on the ground that they were the result of a "pre-existing condition." Appellant's request for reimbursement from Healthplus was denied for expenses incurred after March 31, 1988.

Appellant sued Healthplus in the Small Claims and Conciliation Branch of the Superior Court. The trial judge ruled that appellant did not have a continuing right to coverage under the Healthplus group plan, and that Healthplus had complied with the cancellation provision in the plan by giving effective notice through WCAS. Specifically, the judge found:

First, the contract for health care coverage existed between [Healthplus] and WCAS, not [appellant].

Second, [appellant] was properly and timely notified of the pending termination, and had available to her a health care representative to fully explain her option.

Third, [appellant] could have converted to [Healthplus's] plan on an individual basis, that is assuming the premiums herself, or could have chosen another carrier who covered pre-existing conditions.

## II.

Appellant contends that the cancellation provisions in the group plan required Healthplus, as the terminating party, to provide written notice directly to her.[3] This provision was not satisfied, ac-

---

ory), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982).

**2.** According to appellant, her treating physician declined to participate in MDIPA, Kaiser–Permanente, or Group Health Insurance.

**3.** Whether an insurer provided effective notice

cording to appellant, because WCAS, the employer, and not Healthplus, provided the notice to appellant. Since she never received the notice as required by the plan, appellant maintains, she was entitled to recover her medical expenses incurred after April 1, 1988.

■ Ordinarily, notice to the employee of cancellation of a group insurance policy is only required if it is expressly specified in the insurance contract. *See, e.g., Kimbal v. Travelers Ins. Co.*, 151 Fla. 786, 790, 10 So.2d 728, 729 (1942); *Klat v. Chrysler Corp.*, 285 Mich. 241, 247–49, 280 N.W. 747, 750 (1938). The Healthplus group insurance plan expressly requires notice of cancellation to be given by the terminating party to the subscriber.[4]

Art. III. *Termination of Benefits*

A. *Termination of Benefits*

7. *Termination of Service Agreement.* If the Service Agreement is terminated pursuant to Article III.B.2., then the Coverage of all Members (subject to any right to continuation of the benefits specifically provided by this Agreement at Article IV) shall terminate on the termination date of the Service Agreement. In such event, the party terminating the Service Agreement *shall provide Subscribers with thirty (30) days prior written notice of the termination of this Service Agreement.*

B. *Cancellation*

2. This Agreement may be terminated by Group or Health Plan by giving sixty (60) days prior written notice to the other. *The organization terminating the Plan must also provide written notice to the Subscriber.* In such event, all rights to benefits hereunder shall cease as of the effective date of termination of this Agreement, except as expressly provided in Article IV.A. below.[5]

(Emphasis added.) Furthermore, Article XIV.D of the plan provides that "[a]ny notice under th[e] Agreement may be given by United States mail, first class, postage, prepaid, addressed as follows: ... If to a Member: Member's last address known to Health Plan."

However, because the plan does not expressly state that only Healthplus can give notice of cancellation to the subscriber, Healthplus maintains that the plan allows it to provide notice through the employer, and accordingly, that appellant was properly notified of cancellation of the group insurance plan.[6] Reading the provisions quoted above together, however, a reasonable person in appellant's position clearly would expect to receive written notice of cancellation of benefits directly from Healthplus and not WCAS. *See 1901 Wyoming Ave. Co-op. Ass'n v. Lee*, 345 A.2d 456, 461 (D.C.1975) (standard of contract interpretation). The group plan expressly provided that written notice be given to the subscriber (Mueller) by the terminating party (Healthplus). Furthermore, any ambiguity about who is the terminating party with

---

of cancellation ordinarily *is a question of fact. McQuater v. Aetna Ins. Co.*, 287 A.2d 821, 823 (D.C.1972). Here, however, the facts are largely uncontroverted and the issue is whether, under those facts, Healthplus complied with the cancellation terms of the plan. Interpretation of a contract provision is a question of law on which this court owes no deference to the trial judge. *See Burns v. Hanover Ins. Co.*, 454 A.2d 325, 327 (D.C.1982).

4. Healthplus's "Standard Group Medical And Hospital Service Agreement," referred to as the Agreement, or Service Agreement, sets forth the terms of the group plan. "Member" and "subscriber" denote employees, such as appellant, who are enrolled in the group plan. "Group" denotes WCAS, the employer.

5. Healthplus does not contend that it complied with the requirement to give 60–day notice to WCAS, and that is not an issue in this appeal.

6. Healthplus asserts that WCAS was the terminating organization, but provides no support for this assertion. The trial judge found that Healthplus had formally notified WCAS of the intention of Healthplus not to renew its contract with WCAS. The trial judge's finding is supported by the evidence and not clearly erroneous in view of Healthplus' letter to WCAS. It also is consistent with our interpretation of the provisions of the plan.

the obligation to give notice to the subscriber should be construed against Healthplus. *See Meade v. Prudential Ins. Co. of Am.*, 477 A.2d 726, 728 (D.C.1984); *Vaulx v. Cumis Ins. Soc'y*, 407 A.2d 262, 265 (D.C.1979) (citing *Van Hulle v. State Farm Mut. Auto. Ins. Co.*, 44 Ill.2d 227, 232–33, 254 N.E.2d 457, 461 (1969)). Therefore, despite appellant's actual notice of cancellation, we conclude that Healthplus failed to give effective notice as required by the plan.

First, for reasons given in *Vaulx v. Cumis Ins. Soc'y, supra*, 407 A.2d at 265–66, such an interpretation of the plan protects the innocent insured against the uncertainty of coverage. It is easy for the insurance carrier, which drafts the plan, to be clear about conditions. *Id.* at 265.

Second, if an insurance company were able to rely on third parties not expressly authorized under the plan to give notice of cancellation of coverage, the insured would not be protected against receiving misinformation, as occurred here. When WCAS notified appellant of Healthplus' cancellation, WCAS's memorandum stated, incorrectly, that a subscriber would have to find coverage with another carrier. In fact, a subscriber could have converted to individual coverage.[7] Had appellant been so advised, the problems that she encountered in seeking reimbursement for her medical expenses would have been avoided; by paying the premiums herself, she could have retained her treating physician without being subject to a pre-existing condition clause in her insurance coverage. The fact that appellant received actual notice of the cancellation does not cure the defective nature of the notice. *See Diamond Serv. Co. v. Utica Mut. Ins. Co.*, 476 A.2d 648, 652 (D.C.1984) "[n]otice provisions in insurance contract are of the essence of the contract"); *Capital City Benefit Soc'y v. Travers*, 55 App.D.C. 214, 215, 4 F.2d 290, 291 (1925) (strict compliance with cancellation notice provisions); 17 R. ANDERSON, COUCH ON INSURANCE 2D, § 67:128 (1983) ("if a policy of insurance stipulates as to the manner ... of cancellation, such condition must be obeyed").

Accordingly, since the notice of cancellation of coverage was ineffective, appellant was entitled to receive benefits until the expiration date of the policy, *see Slaughter v. Smith*, 167 Mich.App. 400, 403–06, 421 N.W.2d 702, 704–05 (1988), and the judgment is reversed.

---

7. Appellant maintains that she was not entitled to convert to individual coverage under the strict language of the plan. Article IV.B.4 provides that when coverage is cancelled "pursuant to Article III B.1 and 2, then said Member may, within thirty (30) days after Health Plan notifies Member of the termination of the Agreement, convert his or her membership to non-group membership...." Since cancellation was only given pursuant to Article III.B.2, appellant claims that she did not have the right to elect individual coverage. However, Healthplus admits, and its Member Handbook states, that any group subscriber whose group policy has been cancelled may elect individual coverage.

In any event, the alternative ground for the trial judge's decision, that in the absence of proper notice, appellant could have protected herself by converting to individual coverage under the Healthplus plan or chosen a carrier which covered preexisting conditions, is flawed. Only where an insured evidences an intent to abandon the contract will recovery be denied. *See Vaulx v. Cumis Ins. Soc'y, supra*, 407 A.2d at 266 (no abandonment despite insurer's subsequent reinstatement offers for retroactive coverage where prior to accident the insurer sent insured notice of cancellation with premium refund check and insured immediately obtained other coverage); *Bergin v. Guardian Life Ins. Co. of America*, 53 A.D.2d 582, 384 N.Y.S.2d 838, 839 (1976); *Faruque v. Provident Life & Accident Ins. Co.*, 31 Ohio St.3d 34, 36–37, 508 N.E.2d 949, 951 (1987); 3A J. APPLEMAN & J.A. APPLEMAN, INSURANCE LAW & PRACTICE § 1840 (1967).