**DISTRICT OF COLUMBIA, Appellant,**

v.

**Ruth WILLIS, Appellee.**

**No. 91–CV–951.**

District of Columbia Court of Appeals.

Argued June 16, 1992.

Decided Aug. 4, 1992.

James C. McKay, Jr., Asst. Corp. Counsel, with whom John Payton, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for appellant.

Susan P. Ruch, Law Student # 6228, with whom Ann Marie Hay, Supervising Atty., was on the brief, for appellee.

Before ROGERS, Chief Judge, FERREN, Associate Judge, and BELSON, Senior Judge.

FERREN, Associate Judge:

The District of Columbia appeals a decision of the Landlord and Tenant Division granting a motion to dismiss the District's complaint for possession of a public housing apartment for nonpayment of rent. The trial court dismissed on the ground that the District's notice "to cure or quit" was "legally defective because it did not provide two consecutive notices to the [tenant]: (1) a notice of rights to administrative grievance process pursuant to 14 D.C.M.R. 6404 and 24 C.F.R. § 966.4(1) (1990), and (2) a notice to cure or quit pursuant to D.C.Code § 45–2551 (1990 Repl.)." The District argues that the applicable federal regulations and local statute do not require two separate, consecutive notices unless the tenant has exercised her right to administrative review of the proposed termination of the lease—which she did not do here. We agree with the District and thus reverse and remand for further proceedings.

I.

On June 19, 1990, the District personally served on the tenant a notice to cure or

quit the premises.[1] The notice was based on two grounds: the tenant's failure to pay rent for over 16 months as of the time the notice was served[2] and her failure to sub-

1. The notice said:

    NOTICE TO CURE OR QUIT

    To Ruth Willis:

    The Housing Management Administration (HMA) hereby notifies you of the termination of your tenancy for the premises at 5920 East Capitol Street, N.E. This notice will expire on August 1, 1990, and you must vacate the premises on or before that date.

    The reason(s) for the termination of your tenancy is/are as follows: Non-payment of rent, and delinquent re-exam forms for December, 1989.

    These actions (or failures to act) are in breach of Section(s) 1 & 6(d) of your dwelling lease as well as of Section 45–2551(b), D.C.Code 1981, as amended.

    In order to remain in possession of your premises you must take the following action to correct the breach of your lease: Pay your rent in full and submit your re-exam forms by August 1, 1990.

    If the corrective action is not taken by the expiration date of this notice, you must vacate the premises by that date, otherwise HMA will seek to evict you.

    You have the right to reply to the stated reason(s) to your Management Office. You must pay your rent during the period of this notice and must return your key to the Management Office when you vacate your premises. Your premises is exempt from registration with the Rent Administrator under the Rental Housing Act of 1985 pursuant to Section 45–2515(a)(1), D.C.Code 1981, as amended.

    NOTICE OF RIGHTS TO ADMINISTRA-
    TIVE REVIEW

    You have the right to contest the above action at an administrative review in compliance with Chapter 63 of 14 DCMR (1989). In order to start this action, you may obtain a complaint form at your Management Office and state in writing the action upon which the complaint is based and the action that you desire taken by the HMA. You may also make an oral complaint. Any grievance concerning an eviction or termination of tenancy based upon the creation or maintenance of a threat to the health or safety of other tenants or HMA employees shall be excluded from the grievance process. You are required to personally present your complaint to either your Management Office or the HMA Central Office. To protect your rights, you should present your complaint no later than 4:45 p.m. on the day this notice expires.

    /s/ Carol Richardson
    Housing Manager

2. The tenant had not paid rent since February 1989. By the time the District filed its com-

mit recertification ("re-exam") forms[3] in violation of Paragraph 6(d) of the lease. Relying on 24 C.F.R. §§ 966.4(1)[4] and 966.-58,[5] the tenant moved to dismiss on the

plaint for possession in January 1991, the tenant was $13,432.45 in arrears for 23 months.

3. Each year a public housing tenant must submit a recertification package, which enables the District to determine the tenant's continued entitlement to housing subsidy and to calculate the applicable rent. Paragraph 6(d) of the Lease Agreement provided:

    The Tenant also agrees to fully cooperate with the Administration's annual rent redetermination program. At least once a year at a time designated by the Administration or more often if requested, the Tenant will submit on forms provided by the Administration signed statements setting forth the current facts as to family income, employment and size with such verification as may be required.

4. On July 10, 1991, when the trial court ruled on the motion to dismiss, 24 C.F.R. § 966.4(1) (1991) provided:

    (*l*) *Termination of the lease.* The lease shall set forth the procedures to be followed by the PHA [Public Housing Authority] and by the tenant in terminating the lease which shall provide:

    (1) That the PHA shall not terminate or refuse to renew the lease other than for serious or repeated violation of material terms of the lease such as failure to make payments due under the lease or to fulfill the tenant obligations set forth in § 966.4(f) or for other good cause.

    (2) That the PHA shall give written notice of termination of the lease of:

    (i) 14 days in the case of failure to pay rent;

    (ii) A reasonable time commensurate with the exigencies of the situation in the case of creation or maintenance of a threat to the health or safety of other tenants or PHA employees; and

    (iii) 30 days in all other cases.

    (3) That the notice of termination to the tenant shall state reasons for the termination, shall inform the tenant of his [or her] right to make such reply as he [or she] may wish and of his [or her] right to request a hearing in accordance with the PHA's grievance procedure.

5. At the time of the trial court's ruling, 24 C.F.R. § 966.58 (1991) provided in part:

    If a tenant has requested a hearing ... on a complaint involving a PHA notice of termination of the tenancy and the hearing officer or hearing panel upholds the PHA's action to terminate the tenancy, the PHA shall not commence an eviction action in a State or local court until it has served a notice to vacate on

ground that the notice to cure or quit was legally defective. She argued that federal requirements demanded the District serve two separate, consecutive notices on a public housing tenant.

The trial court in its July 10, 1991 Order agreed that two separate, consecutive notices were required, "one in compliance with federal regulations and a *later*, separate notice in compliance with state eviction statutes." (Emphasis in original). The trial court rejected the contrary conclusion in *District of Columbia v. Jones*, L & T No. 90–28022–90, Memorandum Order at 7 (D.C.Super.Ct. Oct. 18, 1990), where Judge Levie granted summary judgment for the District, concluding that the District could "comply with both federal and local requirements with one notice" to the tenant.[6] The trial court noted conflicting authority in the federal courts. *Compare Staten v. Housing Auth. of Pittsburgh*, 469 F.Supp. 1013, 1016 (W.D.Pa.1979) (two separate, consecutive notices required) *and Noble v. Bethlehem Hous. Auth.*, 617 F.Supp. 248, 252 (E.D.Pa.1985) (following *Staten* )[7] *with Ferguson v. Housing Auth. of Middlesboro*, 499 F.Supp. 334, 336–37 (E.D.Ky. 1980) (two-step notice not required under facts presented).[8] The court, however, gave significant weight to what it characterized as an "opinion letter" written February 9, 1979, by attorney Joseph F. Gelletich, Assistant General Counsel for Low Rent Housing at the United States Department of Housing and Urban Development (HUD). Gelletich wrote the letter in response to questions from the attorney representing the tenants in *Staten, supra.* When asked whether "the [federal] administrative notice period and the required state law notice to vacate period [were] to run concurrently or consecutively," Gelletich replied:

> These periods must run consecutively. The notice required by 24 CFR section 866.4(1)(2) [9] is intended to provide notice of the PHA [Public Housing Authority's] intention to take state or local legal action to evict the tenant *and* to provide a period during which the tenant may lodge a grievance with the PHA which, if resolved favorably to the tenant, would prevent the termination of the lease. Accordingly, it is our opinion that the period provided in Departmental regulations, which safeguards valuable federal "rights," must run prior to the initiation of any state proceedings which will lead to eviction of the tenant under state law.

(Emphasis in original.) In addition to relying on *Staten*, the trial court deferred to this letter as HUD's construction of its own regulations. *See, e.g., Medical Assoc. of Capitol Hill v. District of Columbia Dept. of Employment Serv.*, 565 A.2d 86, 88 (D.C.1989) ("[C]ourt will defer to the agency's construction of a controlling statute or regulation unless it is unreasonable or contrary to law.").

---

the tenant, and in no event shall the notice to vacate be issued prior to the decision of the hearing officer or the hearing panel having been mailed or delivered to the complainant....

6. Judge von Kann distinguished the *Jones* decision from this case because *Jones* was not based on failure to pay rent and because the tenant in *Jones* had initiated (without completing) the administrative grievance process.

7. *See also Duran v. Housing Auth. of Denver*, 761 P.2d 180, 181 n. 3 (Colo.1988) (accepting *Staten* dual-notice requirement).

8. The Supreme Court of Washington, citing *Ferguson*, has rejected the *Staten* consecutive notice requirement. *See Housing Auth. of Everett v. Terry*, 114 Wash.2d 558, 568, 789 P.2d 745, 750 n. 22 (1990).

9. The applicable regulations have been renumbered since the HUD letter and the *Staten* decision. Therefore, citations to 24 C.F.R. § 866.4 (1978) refer to the same regulation now found at 24 C.F.R. § 966.4 (1991), *supra* note 4, and citations to 24 C.F.R. § 866.58 (1978) refer to 24 C.F.R. § 966.58 (1991), *supra* note 5. Except for the redesignation, which was accomplished by final rule published at 49 Fed.Reg. 6712 (February 23, 1984), the text of the two provisions remained unchanged from their original promulgation at 40 Fed.Reg. 33,402 (August 7, 1975), until the revisions promulgated on October 11, 1991 at 56 Fed.Reg. 51,560. Thus, the regulations discussed in the Gelletich letter are identical to those at 24 C.F.R. §§ 966.4 and 966.58 (1990), which were in effect at the time appellee Willis received her notice to cure or quit on June 19, 1990, and to those at 24 C.F.R. §§ 966.4 and 966.58 (1991), which were in effect when the trial court dismissed the District's complaint on July 10, 1991.

## II.

The question is whether the notice to appellee Willis, which combined a notice to cure or quit by a specified date with a notice of the tenant's right to administrative review, *see supra* note 1, was legally deficient for failure to separate into two consecutive notifications the notice of the right to administrative review and the notice to cure or quit. Because the trial court's ruling was an interpretation of law, we review the question *de novo. See, e.g., Mueller v. Healthplus, Inc.,* 589 A.2d 439, 440–41 n. 3 (D.C.1991).

## A.

We note first that the language of 24 C.F.R. § 966.4(1) [10] in no way indicates that the federal notice must be issued separately from, and prior to, any state or local notice to vacate. The other relevant regulation, 24 C.F.R. § 966.58,[11] does indicate that *"[i]f the tenant has requested a hearing,"* the public housing authority may not issue the notice to vacate—which is a prerequisite to any eviction action in state or local court—until after the decision of the hearing officer or reviewing body has been issued and sent to the tenant. *See id.* (emphasis added). The regulations are silent about the timing of the state or local notice to vacate when the tenant does not request a hearing.

In *Staten,* on which the trial court relied, a federal district court in Pennsylvania held that a combined notice did not comply with the federal regulation then codified at 24 C.F.R. § 866.4(1) (1978).[12] The *Staten* court reasoned:

> The determination to evict may not become final until the tenant has had an effective opportunity to present his grievances at a hearing. This initial notice, therefore, must adhere to the requirements of 24 C.F.R. § 866.4(1) and must be couched in language conveying the proposed nature of the lease termination. During the 14 days the tenant has an opportunity to dispute the Hous-

ing Authority's action. If the tenant fails to present any grievance, either orally or in writing, to the Housing Authority within said period, the determination to evict becomes final, or if the tenant loses the grievance, the determination becomes final.

> After the determination becomes final, the Authority must bring its eviction proceedings according to the constraints of state law.... Consequently, a second notice must be delivered to the tenant demanding that the tenant quit the premises within the statutorily prescribed time period.

469 F.Supp. at 1016 (citations and footnote omitted). The *Staten* court accordingly ordered the Housing Authority to establish a two notice system for evicting tenants for failure to pay rent. *Id.* at 1017. The court in *Staten* insisted that language of the initial notice must convey to the tenant the "proposed nature of the lease termination" if it was to meet the requirements of due process expressed in *Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1969). *Staten,* 469 F.Supp. at 1016.

The following year in *Ferguson v. Housing Auth. of Middlesboro,* a federal district court in Kentucky faced the same question and explicitly rejected *Staten.* In denying the tenant's motion for a temporary restraining order and preliminary injunction, the court in *Ferguson* concluded that a single notice provided both (1) " 'timely and adequate notice detailing the reasons for a proposed termination,' " and (2) the required notice of a due process, administrative hearing. 499 F.Supp. at 336–37 (quotation omitted). As in this case, the tenants in *Ferguson,* although "aware of the right to a hearing, did not avail themselves of it." *Id.* at 337.

The *Ferguson* court acknowledged an exception to the rule permitting a single, combined notice: if a tenant exercised the right to a hearing, but the hearing examiner upheld the proposed eviction, a second no-

---

**10.** *See supra* note 4.

**11.** *See supra* note 5.

**12.** *See supra* notes 4 and 9.

tice to vacate would be required pursuant to 24 C.F.R. § 966.58. *See Ferguson*, 499 F.Supp. at 337.[13] The second notice is necessary when the tenant seeks administrative review because, as the regulation recognizes, the administrative proceeding would toll the running of the state notice period until the administrative review could be accomplished. Once the administrative review process is completed, either the tenant wins, *i.e.*, the housing authority may not evict the tenant based on the challenged notice, or the tenant loses, in which case the housing authority must issue a second notice in compliance with state or local law before the eviction process can proceed. But, the *Ferguson* court reasoned, where no administrative hearing is requested and thus none occurs, the single notice cannot be held defective on the ground that it is delivered "prior to the decision of the hearing officer," 24 C.F.R. § 966.58, because, as there is no hearing, the condition requiring a second notice never happens. *See Ferguson*, 499 F.Supp. at 337. The *Ferguson* court accordingly concluded that the single notice could serve a two-fold purpose in a case, such as this one, in which the tenant chooses not to exercise the right to administrative review. In such a case, a second notice would be a "useless gesture." *Id.*

We agree with the court in *Ferguson*. The notice delivered to Willis clearly informed her of (1) the reasons for the termination of her tenancy, (2) her right to "remain in possession of [her] premises" if she took prescribed actions by a certain date, and (3) the appropriate steps she could take to challenge the termination. The notice accordingly was sufficient to inform her how the termination could be stopped, and thus of the "proposed nature of the lease termination." *Staten*, 469 F.Supp. at 1016. Willis, however, did not take steps either to correct her breach or to contest the termi-

nation through administrative review. Given this state of affairs, it would have been a "useless gesture" to inform her a second time that her lease would be terminated. *Ferguson*, 499 F.Supp. at 337.

### B.

The trial court, however, did not merely rely on *Staten* in preference to *Ferguson;* the court buttressed its opinion by recognizing Assistant General Counsel Gelletich's 1979 letter, which parallels *Staten*, as an authoritative interpretation of the applicable HUD regulations, to which the court owed deference. The trial court was misinformed, however, because HUD itself had formally rejected *Staten*, and thus the Gelletich interpretation, five months before the trial court dismissed the District's complaint. Although the trial court could not have had the benefit of HUD's final regulations promulgated on October 11, 1991, HUD had issued proposed regulations on February 14, 1991, which the agency later said "were intended to clarify the relationship between the State and Federal notices." Public Housing Lease and Grievance Procedures; Final Rule, 56 Fed.Reg. 51,560, 51,564 (October 11, 1991). Our examination of the proposed regulations, coupled with HUD's own interpretation of them, *see* Public Housing Lease and Grievance Procedures; Proposed Rule, 56 Fed. Reg. 6248, 6251, 6257 (February 14, 1991), indicates that—before the trial court ruled—HUD itself had agreed with the *Ferguson* analysis and repudiated the position expressed by the *Staten* court and by Assistant General Counsel Gelletich in his 1979 letter.[14] For this reason, we cannot accept that, at the time of the hearing on the motion to dismiss in July 1991, the trial court could properly have considered Gelletich's letter or *Staten* to be the official agency construction of the federal requirement.[15]

---

**13.** In *Ferguson*, the court was construing the predecessor codification at 24 C.F.R. § 866.58. *See supra*, note 5.

**14.** None of the parties' submissions reflects that anyone informed the trial court about HUD's February 14, 1991 proposed revisions of its regulations. Nor were the proposed revisions men-

tioned at the July 8, 1991 hearing on the tenant's motion to dismiss.

**15.** We express no opinion on whether, in the absence of HUD regulations, an opinion letter by an Assistant General Counsel of a federal agency could be tantamount to an agency con-

When HUD issued proposed regulations on February 14, 1991 for notice and comment, those proposals did not announce a new relationship between the federal and state notice periods. Rather, they were intended to clarify exactly how HUD had originally intended its 1975 regulations to affect the state notice period. In the discussion HUD published along with the proposed revisions themselves on February 14, 1991, HUD explained: "Federal statutory law *does not prescribe* the relationship between a Federal lease termination notice, and any notice to vacate required by a State landlord-tenant law." 56 Fed.Reg. at 6251 (emphasis added). The agency then noted *Staten's* holding that two consecutive notices were required and—rejecting *Staten*—explained that the proposed regulations would merely "make clear that.... [t]he State and Federal notice periods may run concurrently." *Id.* HUD unequivocally stated: "A requirement for a two notice system, where the Federal and State notices run consecutively, distorts the respective purposes of the Federal and State notice requirements." *Id.*

As HUD later explained:

In substance, the proposed rule would have:

(1) Required the PHA to give any notice to vacate required under State or local law (as well as the notice required pursuant to the Federal statute).

(2) Provided that the Federal notice *may run "concurrently"* with the State law notice (rather than consecutively, as held by a Federal case [*Staten*] construing the old rule).

(3) Provided that the PHA may not issue a notice to vacate under State and local law until the tenant's grievance right has been satisfied.

56 Fed.Reg. at 51,564 (October 11, 1991) (emphasis added). The agency acknowledged that, during the notice and comment period between February and October, 1991, the proposed regulations had engendered considerable public confusion and that some commentators had "incorrectly

struction of a statute to which a court would owe deference.

understood the proposed rule to require the consecutive running of the Federal and State notices." *Id.*

The agency then concluded:

HUD is persuaded that a mandate to hold the State law notice pending completion of the Federal grievance right is unnecessary to protect any tenant right or interest under Federal law or policy, and that such double notice may be confusing to the tenant and the courts, and that requiring PHAs to give double notice ... is an unnecessary burden and expense for PHAs.

56 Fed.Reg. at 51,565. Therefore, as the agency explained, the final regulation provides:

A notice to vacate which is required by State or local law *may be combined with, or run concurrently with,* a (Federally-required) notice of lease termination.

*Id.,* to be codified at 24 C.F.R. § 966.-4(1)(3)(iii) (emphasis added). Despite HUD's acknowledgment of some commentators' confusion requiring clarification of the proposed regulations, we believe those proposed regulations, supplemented by the agency's accompanying discussion rejecting *Staten,* were clear on their face.

### C.

The tenant points out, however, that, as a general rule, federal regulations are to be applied prospectively. She argues that, because—in her view—the new federal regulations resulted in a narrowing of tenants' rights, manifest injustice would result from applying the new regulations retroactively.

We reject the contention that we are applying new regulations. Rather, we conclude that the regulations originally adopted in 1975[16] apply; that *Ferguson* properly interpreted them; and that HUD's proposed and final regulations in February and October, 1991, respectively, reflecting a *Ferguson* analysis, were merely revisions intended to clarify the relationship between the federal and state notice periods, not to

**16.** *See supra* notes 4, 5, and 9.

change HUD's understanding of that relationship. The trial court accordingly was on weak ground in accepting as the official agency interpretation of the earlier regulations a formulation (*Staten* and the Gelletich letter) which the agency itself had already officially repudiated by the time the trial court ruled on the District's complaint. By February 14, 1991, HUD had explicitly rejected the *Staten* interpretation of the applicable regulations. *See* Proposed Rule, 56 Fed.Reg. at 6251 (February 14, 1991); *see also supra* note 14 and accompanying text.

### D.

We conclude, therefore, that the trial court should have relied on *Ferguson*'s interpretation of the 1975 regulations, buttressed by HUD's February 14, 1991 interpretation rejecting *Staten*,[17] and, accordingly, should have denied the tenant's motion to dismiss.

As long as a single notice actually provides the tenant with all the information and procedural safeguards required under both the federal and District regulatory schemes, one such notice is adequate for cases, such as this one, in which the tenant has not asserted the right to administrative review.

Regulation 24 C.F.R. § 966.58, *see supra* note 5, is not to the contrary. As the first clause of the first sentence of that provision makes clear, it is only "[i]f a tenant has requested a[n administrative] hearing ... and the hearing officer or hearing panel upholds the PHA's action to terminate the tenancy" that the housing authority is then required to serve a second notice to vacate on the tenant. *See Ferguson*, 499 F.Supp. at 337. It is invocation of the administrative review process itself, and the tenant's lack of success before the reviewing body, that triggers the tenant's right to a second notice. In this case, where the tenant did not seek administrative review, the single notice provided was adequate to protect the tenant's rights under both the federal regulations and D.C.Code § 45–2551.

Accordingly, we reverse the order of the trial court dismissing the complaint for possession and remand the case for further proceedings.

*Reversed and remanded.*

---

**17.** There is controversy over the extent to which a court can properly recognize a legislature's effort to construe the intent of an earlier legislature in enacting particular legislation. *See Winters v. Ridley*, 596 A.2d 569, 579 (D.C.1991) (per curiam) (Ferren, J., concurring). Similarly, one can argue that a court should be skeptical about attempts by agency administrators to "clarify" the intent of earlier administrators, especially when the clarifiers have been appointed by a different executive. Arguably the "clarifying" effort could result in significant change (as the tenant here perceives HUD's rejection of the *Staten* interpretation has accomplished), there-by suggesting the question whether "clarifications" should only apply prospectively. We do not address this subject further because we premise our decision on the language of the regulations as interpreted by *Ferguson*, before HUD's 1991 "clarifications." We merely "buttress" our decision by noting that, in light of HUD's 1991 proposed and final regulations, the trial court's deference to the Gelletich letter (and to *Staten*) is suspect. HUD's 1991 clarifications, like *Ferguson*, appear to us a more reasonable interpretation of the regulations at issue than the interpretation offered by *Staten* and the Gelletich letter.